MUELLER *v.* MARSH.[1]

ESTATES OF DECEDENTS—JUDGMENT FOR CLAIMANT—AFTER-DIS-COVERED RECEIPT—REVIEW IN EQUITY.

> A court of equity is not justified in setting aside a judgment against an estate merely because of the subsequent discovery of claimant's receipt running to the deceased, where the payment of certain moneys was admitted by the claimant, who took judgment for the balance only, and it is not clear but that the receipt refers to such admitted payments.

Cross-appeals from Wayne; Carpenter, J. Submitted January 6, 1898. Decided March 22, 1898.

Bill by Jennet F. Mueller, administratrix of the estate of John C. Mueller, deceased, against Robert J. Marsh, to set aside a judgment against the estate. From the decree rendered, both parties appeal. Reversed and bill dismissed.

---

[1] Rehearing denied June 7, 1898.

*Henry M. Duffield* ( *Divie B. Duffield,* of counsel),
for complainant.

*Elliott G. Stevenson,* for defendant.

Moore, J. Complainant filed a bill as administratrix
of her deceased husband, in which she stated that her
husband, in his lifetime, entered into an agreement with
defendant, as follows:

"The undersigned acknowledges herewith that in the
mortgage given him this day by E. F. Riopelle, amount-
ing to thirty-two hundred dollars, Robert J. Marsh has
an interest in the same to the amount of six hundred dol-
lars, bearing interest at the rate of six and one-half per
cent. per annum, which will be paid to him at the expira-
tion of the mortgage three years hence, if not sooner real-
ized, provided that the mortgage brings par value, or
to such proportions as it may realize. The execution of
this acknowledgment is depending on the filing and execut-
ing his (Marsh's) bond, given to me this day, in regard
to his interest of the firm of Marsh & Riopelle, and for
which is this present acknowledgment an equivalent.
This acknowledgment not transferable.

"Detroit, December 3, 1885.

" J. C. Mueller."

"An agreement entered into this day between John C.
Mueller, at Detroit, and Robert J. Marsh, of same place,
to witness: John C. Mueller acknowledges that the mort-
gage given him today by E. F. Riopelle on lots A and
B, Riopelle farm, amounting to three thousand and two
hundred dollars, belongs one-half of it to Robert J.
Marsh, and that half to be paid to him as soon as realized
on it, with the consent of both Mueller and Marsh. Rob-
ert J. Marsh acknowledges that John C. Mueller has an
equal share with him in the interest he (R. J. Marsh)'
holds in the firm of Marsh & Riopelle, and also one-half
in the soda apparatus stored at present in the house of
said Marsh, 101 Catherine street, Detroit. Said Robert
J. Marsh promises herewith to account to said J. C.
Mueller for all his interest as above stated, and give him
his equal share as soon as he realizes on it.

"In testimony, witness our hand and seal this 3d day
of December, 1885.

"John C. Mueller. [L. S.]
"Robert J. Marsh. [L. S.]"

"The undersigned acknowledges herewith that I owe one-half of my interest in the firm of Marsh & Riopelle, at Detroit, to John C. Mueller, of the same place; that, in consideration for this interest, John C. Mueller has deeded to me a share in the mortgage given to him by E. F. Riopelle of thirty-two hundred dollars. on which I have received one thousand dollars in cash, and a further interest of six hundred dollars when realized upon, or mortgage expires. And I herewith promise faithfully to account to said Mueller all the profits, valuables, and stock I have and may receive as my share in the said firm of Marsh & Riopelle, and turn over one-half of the same to said Mueller. I further acknowledge that J. C. Mueller has an equal interest with me in the soda apparatus and counter stored at present on my premises, and that I will turn over to him one-half of the proceeds when sold with his consent. This presents not transferable.

"Detroit, December 3, 1885.

"ROBERT J. MARSH."

Complainant further stated that her husband died in April, 1889; that defendant presented a claim before the commissioners, which was disallowed, but that, upon appeal to the circuit court, a judgment was recovered for $838.33, which judgment was affirmed in the Supreme Court (96 Mich. 488), with costs; that this judgment was made up of $600 and interest; that since the trial complainant has found written evidence showing that at least half of that amount had been paid. She alleged that on the 1st of December, 1885, her husband and said Marsh entered into partnership; that said firm was dissolved, and settled its affairs, but at what date she was not informed; that Marsh never accounted to her husband, and that upon a proper accounting there would be due her, as administratrix, not less than $500. She further alleged that defendant was insolvent, and prayed that he be required to answer under oath as to what sums of money he had received on the claim which had been put into judgment, and to state fully an account of the partnership, and that he be enjoined from attempting to collect his judgment.

The defendant answered under oath, denying that he

had received any payment whatever from Mr. Mueller which ought to have been applied upon the $600, and denying that there was any profit in the partnership business, and giving his version of its condition.

The case was tried before the circuit judge, who set aside the judgment which had been entered in the law case, and decreed that the claim of Mr. Marsh should be allowed at $504.96. From this decree both parties appeal. No proof was offered in relation to the condition of the partnership for which an accounting was asked, and no reference was made to it in the decree.

The question is raised whether a court in chancery has the power to vacate a judgment at law under the state of facts set up in the bill of complaint. We do not deem it necessary to discuss that phase of the case. It is well understood that before a chancery court will interfere with a judgment at law it must be made very clearly to appear that an injustice has been done. A reference to the case of *Marsh* v. *Mueller*, 96 Mich. 488, will aid in understanding what is involved in this proceeding. It was the claim of Mr. Marsh in that proceeding, as well as in this, that he had a one-half interest — that is, $1,600 — in the $3,200 mortgage which had been given by Riopelle. He admitted then, and admits now, that Mr. Mueller paid him $1,000 during his lifetime, but claimed then, and claims now, that Mr. Mueller did not pay him the $600 to which he was entitled when the final $1,200 of the mortgage was collected. It is the contention of complainant that her husband paid this $600 to Mr. Marsh before the death of Mr. Mueller. Mrs. Mueller was sworn, and testified to the search she had made for any papers or receipts passing between Mr. Marsh and her husband, and to the first knowledge she had of the receipt which was offered in evidence, and to having been in the store of her husband a short time before his death, when he was writing in his check-book, and the witness asked him what he was doing; that he made no reply, but Mr. Marsh did; that

Mr. Marsh said, "The doctor is very good in helping me out of a difficulty with a loan." The son was sworn to his fruitless search among his father's papers, and to a talk with Mr. Marsh on the street, when "he said something to me about some papers being in the safe at the store, I believe, and he wanted to get them. He said they were his papers. I did not look for the papers at that time, but afterwards saw all the papers in the safe, and I did not notice any belonging to him." Col. Duffield testified to the finding of the receipt after the trial and judgment in the circuit court, when looking up another claim. Mr. Williams, a bookkeeper at the American Exchange National Bank, testified that Dr. Mueller had an account at their bank, and that in the account there was an item on December 10, 1885, for $300; on September 16th, for $300; on September 9, 1886, for $1,010; on September 8th, $1,228.46. On the cross-examination he said it was an active account, and these were selected from a large number of debits. They would average a check a day of various amounts. He did not know to whom the checks were payable; they were returned when the books were written up. Mr. Bowman, the cashier of the Detroit Savings Bank, testified:

"With reference to this $3,200 mortgage, I remember something about this transaction between Dr. Mueller and the bank. According to this memorandum, it was some seven or eight years ago, and I have not seen it since. On the 12th of December, 1885, the bank made a loan to Mr. Mueller of $2,000 on security of a mortgage of $3,200, which, if I remember right, was made by Edward F. Riopelle. That loan ran along until September 8, 1886, when the bank took over the mortgage, deducting the amount due on Mr. Mueller's note, and paid him the difference. That was the 8th of September, 1886, and the difference which he got at that time was $1,228.46. The mortgage was subsequently paid."

The receipt was offered in evidence, and reads as follows:

"Received, December 10, 1885, of John C. Mueller, three hundred dollars, advance to me on the produce of the loan of two thousand dollars, made this day on the Riopelle mortgage.        R. J. MARSH."

Mr. Marsh was called as a witness by the complainant, and it is claimed that his testimony, when confronted by the receipt, was equivocal, and that a fair inference from it is that he had been paid by Mr. Mueller in his lifetime. This case was tried in May, 1897. While there was a reference made to a writing in the bill of complaint, no copy of the receipt was set up, and it is not shown that Mr. Marsh ever saw it until it was shown him when he was a witness. It is not strange that he could not remember all the details surrounding the transaction. His testimony is of the most positive character that the money mentioned in the receipt was part of the $1,000 paid to him by Mr. Mueller, and that he had never been paid any part of the $600 to which he was entitled when the last $1,200 of the mortgage should be collected. We have recited the substance of all the testimony, and there is nothing in any of it which contradicts the testimony of Mr. Marsh, unless it is to be found in the statement contained in the paper signed by him, dated December 3d, in which he says, "In consideration for this interest, John C. Mueller has deeded to me a share in the mortgage given to him by E. F. Riopelle of thirty-two hundred dollars, on which I have received one thousand dollars in cash, and a further interest of six hundred dollars when realized upon, or mortgage expires," taken in connection with the receipt for $300. We think, when these two papers are read in connection with the testimony of the cashier of the bank, instead of contradicting Mr. Marsh, they strongly corroborate his testimony. It is shown by the testimony of the cashier that on December 12, 1885, the bank made a loan to Mr. Mueller of $2,000 on the security of this mortgage, and that this loan ran along until September 8, 1886, when it was paid by the bank's taking over the mortgage,

and paying the difference, which amounted to $1,228.46. The $300 receipt recites that it was "advanced to me on the produce of the loan of two thousand dollars, made this day on the Riopelle mortgage." There was but one loan of $2,000. It had undoubtedly been negotiated, but it was not completed by the bank's paying the money over until two days later. For some reason, before the money was obtained from the bank, $300 was paid to Mr. Marsh as an advance to him on the $2,000 loan, which was consummated two days later between the bank and Mr. Mueller. We cannot see why this is not a much more reasonable explanation of the transaction than to say that the receipt does not refer to the money received from the $2,000 loan, but does refer to the money realized on a sale of the mortgage made nearly a year later, especially in view of the fact that Mr. Marsh was not entitled, under his contract with Mr. Mueller, to this $600, until the mortgage was realized upon, or the mortgage expired.

The complainant has not made so clear a case as to justify setting aside any part of the judgment.. The decree is reversed, and complainant's bill is dismissed, with costs of both courts.

The other Justices concurred.