FINN v. ADAMS.

1. JUDGMENTS—VACATION—EQUITY.

A judgment at law may be vacated by a court of equity in a proper case, but the exercise of such jurisdiction is rare, and is only exercised after it has been made clearly to appear that an injustice has been done.

2. PARENT AND CHILD—SUPPORT OF CHILDREN—IMPLIED AGENCY.

Where, as in this State, the statute (2 Comp. Laws, § 4495) imposes a legal duty upon a parent to support his minor children, a total abandonment of a child raises an implied agency on the child's part to bind the parent for necessaries.

3. SAME—JUDGMENT—SETTING ASIDE.

On a bill to set aside a judgment and sale in attachment, founded on a claim for necessaries furnished the minor children of a life convict, evidence examined, and *held* that it would be inequitable to sustain the bill.

4. MONEY RECEIVED—LIFE CONVICT.

Where, after complainant's incarceration for life, defendant collected a claim which had belonged to complainant prior to incarceration, which was paid to defendant as guardian of complainant's children in recognition of defendant's claim that the right to the money had passed to him as such guardian, complainant's remedy against his debtor not being thereby affected, he was not entitled to recover the money from defendant as money received to his use.

Appeal from Marquette; Stone, J.   Submitted October 6, 1904.   (Docket No. 29.)   Decided November 29, 1904.

Bill by Lawrence Finn against Sidney Adams and George W. Shaw to vacate a judgment and sale in attachment. From a decree dismissing the bill, complainant appeals. Affirmed.

*John L. Heffernan* (*C. F. Button*, of counsel), for complainant.

*Hill & Smith*, for defendants.

MONTGOMERY, J.   The bill in this case was filed to vacate a judgment in attachment and sale thereunder of the property attached to defendant Adams and also a sale by him to the defendant Shaw.   The attachment proceedings were admittedly regular, and the title which passed was good in law.   The bill also attempts to charge the defendant Adams, as trustee of a fund of $192, received of F. W. Read & Co., as hereinafter stated.

The theory of the complainant appears to be that there was concealment of the fact of the pendency of the attachment suit at a time when defendant Adams had an opportunity to communicate the fact, and that there was in fact no valid claim existing in favor of the defendant Adams (plaintiff in attachment) on which to base the attachment proceedings.

The facts are involved.   It appears that in December, 1887, the complainant was convicted of the murder of his wife, and sentenced to the State prison at Jackson for life. That at the time of his incarceration he left two minor sons, 14 and 16 years of age, respectively, and he also owed some small debts.   His property consisted of the lot in question, then of small value, not exceeding $300, and a claim against F. W. Read & Co., of $192, for money which had been deposited with them in the expectation that it would be repaid in lumber with which complainant expected to build a house on the lot in question.

Under the advice of an attorney that complainant had, by his sentence, suffered civil death, and that his estate had descended to his children the same as though he was actually dead, an aunt of the children filed a petition in the probate court for the appointment of the defendant Adams as guardian of the children. Such appointment was made. Later, acting under an order of the circuit court in chancery, the defendant sold the lot in question to one Blackbird. Defendant Adams loaned Blackbird the purchase price and other money with which to pay for improvements, taking security back from Blackbird for the same. Under this security defendant Adams has succeeded to the rights of Blackbird. Defendant Adams also received from Read & Co. the $192 in their hands. Defendant Adams paid out for the use of the two boys in the purchase of necessaries, for board, clothing, and medical attendance, $429.52, and in addition paid to the older son $150 after he attained his majority.

Upon discovering, in 1893, that these entire proceedings were void, defendant Adams visited the complainant in prison, and stated to him the facts as to the expenditures made by him, and asked that the complainant deed the land to him to answer his demand. This complainant declined to do. Adams secured an assignment of the claims from most of the parties who directly furnished the necessaries to the two boys, and brought suit in attachment, causing a levy to be made upon the land in question. The suit proceeded to judgment. A sale of the property was made, and Adams became the purchaser. It appears that the attachment proceedings were instituted before Adams' visit to complainant, and that they were not referred to in the interview.

It is the contention of the complainant that Adams had no claim against him, and that if he (complainant) had been notified of the suit he could have successfully defended against him. If the claim asserted by Adams in the attachment suit had been wholly unconscionable, there would be much force in this contention. If, on the

other hand, the demand upon which that suit was based was one which, in justice and equity, the defendant was under obligations to pay, and the whole interest of complainant in the land sold did not exceed the amount justly owing by the complainant, we are not able to perceive how the complainant has suffered any wrong which a court of equity will take cognizance of. A judgment at law may be vacated by a court of equity in a proper case, but the exercise of such jurisdiction is rare. It is only exercised after it has been made to appear clearly that an injustice has been done. *Cleveland Iron Mining Co.* v. *Husby*, 72 Mich. 61; *Mueller* v. *Marsh*, 116 Mich. 378. In the present case there can be no doubt that the complainant was under legal obligation to furnish his minor sons with the necessaries of life. *Courtright* v. *Courtright*, 40 Mich. 633. And, while the authorities are not fully agreed, we think the better rule is that, where the duty to maintain one's children is made a legal duty by statute, as by our statute (section 4495, 2 Comp. Laws), the same agency to bind the father for necessaries is to be implied where there is a total abandonment of a minor child, incapable of supporting himself, as is implied in the wife on desertion by her husband. *Stanton* v. *Willson*, 3 Day, 37; *Dennis* v. *Clark*, 2 Cush. 353; *Lamson* v. *Varnum*, 171 Mass. 237; *Zilley* v. *Dunwiddie*, 98 Wis. 428; 21 Am. & Eng. Enc. Law (2d Ed.), pp. 1052–1054, and cases cited. The evidence is not full as to whether all the money expended on behalf of those minors was so essential as to justify the application of the doctrine of implied agency, but, as that question was necessarily determined in the attachment case, and as we see no reason for questioning the good faith of Mr. Adams' claim in that regard, we assume that the expenditures were such as fall fairly within the rule.

But it is insisted that Adams' money did not pay for these necessaries, and that, therefore, *he* had no claim, although others may have had. This is stating the form, rather than the substance, of the transaction. Adams in

fact paid the money for the necessaries. This, as between complainant and Adams, ought to be sufficient. But if we go further, and take account of the fact that Adams nominally received the money on an ineffectual sale of this lot, we may further find from the record that it was money which he himself advanced, and that he has succeeded to all the rights which Blackbird acquired. We are convinced that, in any view we may take, it would be grossly inequitable to set aside this judgment and sale.

Is complainant entitled to recover the $192 received by defendant of Read & Co.? The circuit judge held that he was not, and on the ground that there was no privity between complainant and defendant. The complainant contends that this view is mistaken, and that the money was received by defendant as money coming through the complainant. We are not able, however, to distinguish this case from *Corey* v. *Webber*, 96 Mich. 357; for while the defendant, when he received this money, did so in recognition of the fact that the claim against Read & Co. had once belonged to complainant, it was received by him upon the claim that the right had passed to defendant as guardian of complainant's children, and was paid by Read & Co. in recognition of that claim. Complainant's remedy against Read & Co. was in no way affected or postponed. No specific fund of complainant was diverted. The case is within the principle of *Corey* v. *Webber*, and cases cited.

The decree dismissing the complainant's bill is affirmed, with costs.

The other Justices concurred.