JOHNSON *v.* COOK

1. EQUITY—LACHES—BILLS AND NOTES.

Where complainant loaned funds on the advice of her banker, who indorsed a note of the debtors before delivery, and at different times assured her that she need not worry about the matter when the makers defaulted, and told her he was in a position to see that she got her money, acting as her adviser, and afterwards taking a conveyance as security for his advances of all the property of the debtors which was liable to execution, and where complainant delayed to bring suit in reliance on his assurances, he was not entitled to complain of her laches as a defense to her suit to set aside the transfer or deed as void in part.

2. SAME—DELAY.

Not mere delay, but delay which works prejudice to another, is required to constitute laches.

3. SAME — CHANGE OF DEFENSES — AMENDMENTS CONSIDERED AS MADE—WAIVER OF VARIANCE. .

·On appeal, the objection could not be raised for the first time that the claim and evidence in support of the same offered by defendant that a portion of the property was transferred to him absolutely, and not as security, although he claimed no part thereof in his answer, as an absolute conveyance; an amendment of the answer might have been made in the lower court if the point had been presented in due time, and in any event the amendment was merely matter of form.

4. SAME — CONSIDERATION — MORTGAGE, DEED INTENDED AS SECURITY.

An agreement that the grantee in a deed was to receive a third interest in property conveyed to him, as payment for his services in financing the grantee, sufficiently supported the transfer of that interest as agreed, and was a valuable consideration.

5. FRAUDS, STATUTE OF—PAROL AGREEMENT—PERFORMANCE.

A parol agreement for the transfer of land in consideration of services to be rendered, was taken out of the provisions of the statute of frauds when the conveyance was executed.

6. MORTGAGES — DEEDS — RECORD, EFFECT OF—VENDOR AND PURCHASER—EXECUTION LEVY.

Under the registration acts (3 Comp. Laws, § 8980; 4 How. Stat. [2d Ed.] § 10842), requiring separate registration of mortgages and deeds, the recording of a deed given as security for a debt does not operate as constructive notice of the grantee's interest as to a party levying a writ of attachment without actual notice of the existence of the deed.

7. SAME—NOTICE.

Evidence that counsel for the complainant, in the course of prior litigation between the parties, had notice of the existence of the conveyance under which complainant claimed, from the fact that the record of the instrument as a deed was offered in evidence, did not charge complainant with notice of the mortgage.

8. GUARDIAN AND WARD—INCOMPETENT PERSONS—INSANITY.

The property of an insane person resident in Michigan and under general guardianship is not subject to execution.

9. INSANE PERSONS—JUDGMENT—COMPETENCY.

In a suit in aid of execution based on a judgment obtained in attachment proceedings against a nonresident copartnership, of which one of the members was insane, the action being defended by counsel employed by a competent member of the firm, the judgment was only voidable, not void, and the court of equity would not set it aside except upon a showing of a meritorious defense.

10. CORPORATIONS—FRAUDULENT CONVEYANCES—KNOWLEDGE.

A corporation, formed by the defendants for the purpose of hindering and delaying their creditors, was not a purchaser in good faith of property of the defendants conveyed to it for shares of its capital stock.

Appeal from Iron; Flannigan, J. Submitted November 17, 1913. (Docket No. 20.) Decided March 26, 1914. Rehearing denied June 4, 1914.

Bill by Nettie Johnson against Wallace P. Cook and others in aid of an execution at law. From a decree for complainant, denying part of the relief prayed, both parties appeal. Affirmed.

*A. L. Sawyer (Allan V. Classon,* of counsel), for complainant.

*Ball & Ball,* for defendants.

KUHN, J. The facts in this controversy, as found by the circuit judge, and which we are satisfied find support in the evidence, are stated in his opinion as follows:

"Some time previous to March 7, 1891 (the exact time is immaterial), Mrs. Johnson, a widow, residing at Oconto, Wis., intrusted her money to the defendant Beyer, a banker and dealer in real estate, and he negotiated a loan for her of $2,000 to one Ford, and as security, took from Mr. Ford an assignment to

Mrs. Johnson of a land contract held by Ford for the purchase from one Comstock of a certain farm, located in Oconto county, Wis., and later known as Cook Bros.' farm. Subsequently the defendant Wallace P. Cook and decedent, Willard P. Cook, purchased Ford's rights under the Comstock land contract, and, as part consideration for the purchase from Ford, they assumed the payment of the loan made by Mrs. Johnson to Mr. Ford through Mr. Beyer. Desiring to obtain the legal title to the farm, the Cooks arranged with Mrs. Johnson for a surrender by her of the land contract which Mr. Ford had assigned to her as security for the loan, and in lieu thereof gave her their promissory note for $2,000 which was indorsed before delivery by Mr. Beyer. The note, except the interest thereon up to August, 1896, being unpaid, Mrs. Johnson brought suit thereon in the circuit court for the county of Oconto, Wis., July 3, 1903, against the Cooks and Mr. Beyer. Mr. Beyer filed an answer in that suit, admitting he indorsed the note, but set up the statute of limitations as a bar to the action against him. The plea of the statute of limitations was sustained, and the action as to Mr. Beyer was dismissed. On December 29, 1903, the Wisconsin court entered judgment in favor of Mrs. Johnson and against Wallace P. Cook and Willard P. Cook for damages and costs amounting to $3,060.34. Being unable to make the execution issued on the judgment in the Wisconsin court, Mrs. Johnson commenced a suit against the Cooks in the circuit court for the county of Iron, Mich., by attachment. The writ was levied January 4, 1909, on the lands described in the bill of complaint. The Cooks appeared, and judgment was rendered in the Michigan court in favor of Mrs. Johnson for damages and costs amounting to $4,131.89. The Michigan judgment was rendered July 19, 1909, the costs were taxed August 28, 1909, and execution was issued August 30, 1909. The execution was levied on the lands, and notice of such levy was duly filed as required by 3 Comp. Laws, § 9224, on September 3, 1909. May 8, 1896, Wallace P. Cook and wife and Willard P. Cook and wife executed and delivered to Mr. Beyer an instrument which, on its face, purports to be a warranty deed of the lands taken in

execution, and on August 19, 1903, the Cooks and Beyer, being joined by their respective wives, executed and delivered a deed of the same lands to the defendant the Cook Land, Construction & Producing Company. The bill of complaint herein was filed in aid of the execution issued on the Michigan judgment; the complainant claiming that the Beyer instrument and the deed to the construction company are void as against her execution lien. At the time of the execution and delivery of the instrument to Beyer, the Cooks were indebted to him in the sum of about $60,000, and the deed to Mr. Beyer was intended between the parties to convey absolutely to Mr. Beyer an undivided one-third interest in the land, and as a mortgage of the remaining undivided two-thirds, to secure the payment to Mr. Beyer of the existing indebtedness of the Cooks, and any future advances which Mr. Beyer might make to them. At the time of the levy of the writ of attachment, by which the Michigan suit was commenced, the Beyer instrument was not on record in the office of the register of deeds of Iron county. After the levy of the attachment, but before the levy of the execution, Mr. Beyer caused his instrument to be recorded as a deed in the register's office in Iron county, and it was there recorded in volume 9 of Deeds, at page 606, on March 13, 1909."

From a decree which held that an undivided two-thirds interest of the property described in the bill of complaint is held subject to the lien of the execution, and to a sale thereunder, both complainant and defendants have appealed.

The errors relied upon by the defendants are stated as follows:

"(1) The court erred in not dismissing the complainant's bill on account of laches.

"(2) The court erred in holding that the deed from Wallace P. Cook and Willard P. Cook to George Beyer of May 8, 1896, was a mortgage as to the undivided two-thirds of the land.

"(3) The court erred in holding that the record of said deed was not constructive notice, and that the execution levy took precedence thereof, and in decid-

ing, contrary to the evidence, that the complainant did not have actual notice of the existence of said deed at the time of the levy of the execution on said lands.

"(4) The court erred in holding that the deed of August 19, 1903, to the Cook Land, Construction & Producing Company was not given upon a valuable and sufficient consideration.

"(5) The court erred in holding that said corporation was formed and said deed of August 19, 1903, was given for the purpose of hindering and delaying creditors, and that the same was fraudulent.

"(6) The court erred in holding and decreeing that the undivided two-thirds of the land described in said bill be sold on execution, free and clear from any claim, lien, or title of the defendants George Beyer and the Cook Land, Construction & Producing Company.

"(7) The court erred in not entering a decree to dismiss the complainant's bill upon all the evidence in the case."

In addition to claiming that these contentions of the defendants are not well founded, the complainant also claims that the court erred in holding that the conveyance from the defendants Cook to the defendant Beyer, of May 8, 1896, was an absolute conveyance of the title of the undivided one-third interest in the land, and that the entire interest in the land should be held to be subject to complainant's execution.

The question of laches is argued at considerable length in briefs of counsel. The note representing the indebtedness of Cook Bros. to the complainant became due December 7, 1891. It is defendants' claim that the laches arose because complainant did not attempt to enforce payment of the note until July 3, 1903, when she commenced suit in the Wisconsin courts, because she surrendered security that she held for the payment of the indebtedness represented by the note; that she neglected to attack the conveyance made to the Cook Land, Construction & Producing

Company in August, 1903, for more than six years after said conveyance was made and recorded, and after the defendant Beyer had for years prior to the filing of her bill made large money advances to the defendants Cook, in reliance upon the security furnished him. Complainant urges that the defense of laches should be expressly raised either by the answer or demurrer. The defendants say that all the facts they rely upon appear on the face of the bill. It is unnecessary to pass on this question, as, in our opinion, there is no merit in the claim of laches. The complainant testified, as follows:

"On the 7th of December, 1891, when the note came due, I took the note and went down to Mr. Beyer, and he told me to be patient; that it was going to be paid soon; that he was on the back of the note, and I should not worry; all loans that he made would be made good. That was always the winding up— all loans he made for me he would make good. I did not see the Cooks after that; I never could find them. My last visit to Mr. Cook was on the day he gave me that note. I never saw him but once on the street, and he simply said he would fix that up, and that was all. I never had any conversation with him. My business was with Mr. Beyer, as he made my loans, and I trusted him with my loans. I was a widow at that time, and that is how he got my money, every dollar I had. Mr. Beyer at one time— I went to the office; that was when I still held the note, and I told him I couldn't live like this; I had to have money. He says, 'Have you got the note with you?' I said, 'I should say I have.' He took the note and he said, 'Let me take it.' And he took it and handed it to Lawyer Trudell, and he collected $200, and he held me up; he robbed the till. That was before the judgment."

Thus it appears that the defendant Beyer acted as her adviser and counsel in the matter; reassured her when she worried about it; told her that he was in a position to see that she got her money; and in 1897, after he had been, in 1896, a party to the transfer of

all the Cook property, and while he was still liable as an indorser thereon, he took the note from her and gave it to a lawyer of his own selection to collect. The fact that all of the Cook property was covered by the transfers mentioned, so as to make the Cooks apparently execution proof, together with the complainant's reliance upon Beyer's promises, are, to our mind, complete and sufficient justification for her delaying the suit until action became necessary in order that it be not barred by the statute. There is no force to the claim that the defendant Beyer, because of the inaction of complainant, was induced to make large loans to the Cooks. He gave his reason for advancing money to the Cooks in the following testimony:

"After the giving of that deed in May, 1896, I continued to advance money to the Cooks, and am helping them still. I am advancing them money because I think the property up here is worth enough to pay up, will be enough to square up everything. They have been and are still carrying on business, with my help. Those judgments that have been referred to, many of them they have been straightening up; they have been paying up everything as fast as they can, and Mr. Cook told me he would pay up this matter here, pay it just as soon as he was able to."

He testified that he had confidence in the Cooks, and that they would, with help, work their way out and pay their debts. We are satisfied that the various delays complained of did not result in injury or prejudice to the parties now urging this defense. The laches which causes a court of equity to look with favor on this defense is not mere delay, but delay that works disadvantage and prejudice to another. *Boyce* v. *Danz,* 29 Mich. 146.

It is the claim of the defendants, and it is supported by the testimony as a whole, as found by the circuit judge, that the Cooks deeded to Mr. Beyer one-third of the land in question in part compensation for the loans made, and to be made, to them by

Mr. Beyer. It is the contention of the complainant that the answer did not make such a claim, and that the defendants are bound by their answer, to the effect that the instrument was taken as security; that it was an afterthought to claim that as to a one-third interest it was a deed. The testimony of both Mr. Beyer and Mr. Cook sustained the claim that the transfer to Beyer of a one-third interest in the land was absolute. At the time this testimony was received, no objection was made on the ground that there was a variance. If objection had been made on that ground, the defendants might have applied to the court, and undoubtedly would have been granted leave to amend the answer in that regard; and, if a claim of surprise had been made, further time might have been granted to meet the evidence. We think the objection was waived, and should not be raised for the first time on appeal. The failure to make the amendment was a mere matter of form. See *Miller* v. *Supply Co.*, 150 Mich. 292 (114 N. W. 61) ; *Williams* v. *City of Lansing*, 152 Mich. 169 (115 N. W. 961).

We are also satisfied that the consideration for this transfer of the one-third interest was ample. The agreement was that Mr. Beyer was to receive this interest for loaning money, and for indorsing the Cooks' paper for a long term, to a large amount, and for generally financing their operations. It is urged that the original parol agreement could not be enforced on account of the statute of frauds, but the agreement was carried out by making the conveyance, and is therefore binding. *Barber* v. *Milner*, 43 Mich. 248 (5 N. W. 92).

The proofs are convincing that the instrument did not convey to Beyer the remaining two-thirds interest. It was given as security. It having been recorded as a deed, and not as a mortgage, nothing else can now be claimed for it as against the complain-

ant's equities. Section 9224, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 11386), provides that an execution levied as provided for by statute shall become a lien upon the land, and the "lien thus obtained, shall, from the filing of such notice, be valid against all prior grantees and [mortgagees] mortgages of whose claims the party interested shall not have actual or constructive notice."

As to the two-thirds interest in the land, holding as we do that the conveyance was not a deed and being recorded only as such, it was subrogated to complainant's levy. *First Nat. Bank of Durand* v. *Phillpotts*, 155 Mich. 331 (119 N. W. 1). The complainant did not have actual notice until long after the levy of the execution. The deed being given as security as to the two-thirds interest, the statute (section 8980, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 10842), required that it be recorded as a mortgage, and, having failed to do this, the complainant cannot be charged with constructive notice of its being such. *Grand Rapids Nat. Bank* v. *Ford*, 143 Mich. 402 (107 N. W. 76, 114 Am. St. Rep. 668, 8 Am. & Eng. Ann. Cas. 102). The deed does not show on its face that it was given as security, and the recording of it as a deed is notice of no more than it shows. Defendants' counsel claim that, when the judgment was obtained by the plaintiff against the defendant Cook in the circuit court for Iron county, there was proof of the existence of this deed of 1896, and the counsel who now represents complainant represented her in that litigation. The notice that counsel for complainant received was when the record of the instrument as a deed was introduced in evidence. The original deed was not produced. As this is not constructive notice of a mortgage, it necessarily follows that it is not actual notice of a mortgage.

It is contended that the judgment in the law case is void as against William P. Cook because he was in-

sane at the time the judgment was rendered, and no guardian *ad litem* was appointed for him. This suit was started by attachment on January 4, 1909. The defendants appeared by counsel and interposed a plea of abatement and general issue. Judgment was had, and execution issued, and it was not until after the filing of the bill in this cause that the attorneys for the defendants made a motion in the law action to vacate the judgment because of having learned that the defendant Willard P. Cook was insane, and that therefore they had no authority to appear for him. The regularly appointed guardian in Wisconsin appeared upon the hearing of said motion and ratified the action of the attorneys in appearing for the insane person at the trial. The motion was overruled, and no appeal taken from the proceedings in the law case. The question of the insanity of Willard P. Cook is raised in this proceeding by the answer of his guardian *ad litem*. Willard P. Cook having died, Kate E. Cook, administratrix of his estate, was, by consent of the parties, substituted as administratrix defendant in his place It appears clearly from the record that the Cook Bros. were copartners from and after 1887. The debt sued upon was a partnership debt, that of W. P. Cook & Bros., as shown by the note, and the land attached was partnership property, which was shown by the statement of Kate E. Cook, the general guardian of the insane defendant. Counsel who appeared for the defendants were authorized to do so, as shown by the affidavit of one of the counsel, who stated "that said attorneys were retained by Wallace P. Cook to represent the defendants; said Wallace P. Cook assuming to authorize said firm to enter the appearance not only of himself but of said Willard P. Cook."

Without question the interest of Wallace P. Cook was legally attached, and as a member of the firm he could employ counsel to appear for the firm, which

included both defendants, and defend against the prosecution upon the firm debt. The insane defendant did not have, and could not have, a general guardian in Michigan, because he was a resident in Wisconsin. Had he been a resident of Michigan and under general guardianship here, his property would not have been subject to execution, as held in *Nolan* v. *Garrison*, 156 Mich. 397 (120 N. W. 977).

In the law proceedings, the interests of the insane defendant were ably defended by the attorneys who at the time considered themselves employed in his behalf, and, on motion to vacate the judgment, the general guardian from Wisconsin ratified the appearance of the attorneys who had made the defense. We are of the opinion that, under these circumstances, the judgment, at most, was voidable upon a showing of merits, and not void. There is no such showing in this case. The debt is not denied, and the defense is a technical one. As was said in *Mueller* v. *Marsh*, 116 Mich. 375, 378 (74 N. W. 513, 514):

"It is well understood that before a chancery court will interfere with a judgment at law it must be made very clearly to appear that an injustice has been done"—

which was cited with approval in *Godde* v. *Marvin*, 142 Mich. 518 (105 N. W. 1112). See, also, *Finn* v. *Adams*, 138 Mich. 258 (101 N. W. 533, 4 Am. & Eng. Ann. Cas. 1186); *Godde* v. *Marvin*, *supra;* *Eggert* v. *Eggert*, 144 Mich. 182 (107 N. W. 920); 22 Cyc. p. 1244. There being no claim made that there is any defense available which was not interposed, and no showing of injustice, we are of the opinion that the judgment in the law action should not be vacated.

The complainant, in order to show that the deeds from the Cooks to Beyer in 1896 and from the Cooks and Beyer to the defendant corporation in 1903 were void as to the complainant's levy, made a *prima facie*

case by showing the judgment, the levy of execution, and the record of the conveyances (3 Comp. Laws, § 10203, 5 How. Stat. [2d Ed.] § 12864), and also the fact that the debt upon which the judgment was issued was in existence before the execution of either conveyance. The burden of proof being then upon the defendants, by virtue of the statute, they attempted to show that these transactions were in all respects bona fide. The circuit judge's finding with reference to the transaction in 1903 was as follows:

"The Cook Land & Construction Company was organized by the Cooks and Beyer under the laws of Wisconsin. One-third of its capital stock was issued to Mr. Beyer, one-third to Wallace P. Cook, and one-third to Willard P. Cook. One share of the Beyer stock was issued to one Cleary, an employee of Mr. Beyer, to enable him to qualify as an officer for organization purposes only. The company was organized, and these lands and other property conveyed to it, for the express purpose of hindering and delaying creditors of the Cooks. That such was the object of the conveyance was known to all stockholders and all the officers, and consequently to the corporation itself. To say that the corporation bought the lands and paid full consideration therefor by issuing its stock to the Cooks and Beyer, and is protected in its title against the creditors which the corporation, its stockholders, and officers set out to hinder, delay, and defraud is to trifle with common sense. It is contended that, the corporation being an innocent purchaser for value, its title cannot be divested, and, if the acts and conduct of the Cooks and Mr. Beyer was fraudulent as to the creditors of the Cooks, the complainant's remedy is to subject the stock of the corporation held by the Cooks and Beyer to the execution. There might be force in this position if the corporation was an innocent purchaser for value, which it is not."

We think this conclusion of the learned judge is justified by the evidence. The company was composed of Beyer and the Cook Bros. The transaction

179 MICH.—9.

was arranged by them. According to their own testimony, the company has given Beyer more stock than he paid for, and gave Cooks much less stock than they contributed in property. He gave no credit to the Cooks on his books, at any time, for any of the property conveyed to him, either by the deed of 1896 or that of 1903, and claimed that they still owed him the entire account. The one-third of the stock issued to Beyer was held by him as collateral security for the entire account due him from the Cooks. Beyer testified as to the organization of the company as follows:

"*Q.* What was your object in organizing that company in June, 1903? (This question was objected to by defendants' counsel as immaterial.)

"*A.* Simply to enable Cook to go on and do business, so that he could make money enough to pay up his indebtedness. He was embarrassed at that time, and couldn't carry on business very well in his own name.

"*Q.* You organized the company so that he could carry it on?

"*A.* The company was organized so that he would not be harassed to death, so he could do business."

It seems clear that the purpose of the organization of the company was to prevent the Cooks from being annoyed by their creditors, and necessarily resulted in delaying and hindering them.

We are satisfied that the circuit judge reached a just and equitable conclusion, and the decree is therefore affirmed, with costs to the complainant.

McAlvay, C. J., and Brooke, Stone, Ostrander, Bird, Moore, and Steere, JJ., concurred.