RACHO *v.* WOESTE.

1. APPEAL AND ERROR—DE NOVO REVIEW OF CHANCERY CASE.

   Suit to set aside default law judgments, execution sale of bonds thereunder, for an accounting, quieting of title and for removal of clouds on title, being a chancery case, is considered by the Supreme Court *de novo.*

2. JUDGMENT—FRAUD—COLLUSION—CONSPIRACY—EVIDENCE.

   In suit to set aside default judgments in actions at law by husband and wife for injuries to latter through negligent operation of plaintiff's car by her son, evidence clearly did not establish the alleged fraud, collusion or conspiracy between the then attorneys for the respective parties and the plaintiffs in the law action.

3. SAME—DEFAULT—NONJURY TRIAL—HEARING BY JUDGE—EVIDENCE.

   Default judgments in actions at law by husband and wife for injuries to latter, tried by court without a jury, in which the testimony was duly recorded by the official court reporter, are deemed regular and valid in the absence of positive evidence in suit to set them aside that the trial judge did not hear the testimony presented.

4. SAME—SETTING ASIDE—EQUITY—FRAUD—INJUSTICE.

   A court of equity will not interfere with a law judgment except in case of fraud or when an injustice has been done.

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE—REDUCTION OF LAW JUDGMENT IN EQUITY SUIT.

   Drastic reduction of default judgments in actions at law by trial court in suit to set them aside is not disturbed nor authority of trial court to take such action determined where judgment creditors have not appealed, as appellant, the judgment debtor, has not been prejudiced.

6. SAME—DECREE CONCLUDING PROLONGED LITIGATION.

   Litigation lasting over a period of 14 years which had given rise to a confused factual situation justified decree in suit

to set aside default judgments, which equitably determined the rights of all parties and attorneys and concluded the prolonged litigation.

CHANDLER, WIEST, AND SHARPE, JJ., dissenting.

Appeal from Wayne; Jayne (Ira W.), J. Submitted January 8, 1943. (Docket No. 73, Calendar No. 41,908.) Decided June 7, 1943. Rehearing denied September 7, 1943.

Bill by Sophia Racho and another against John Woeste and wife and Archie Montrie for an accounting and to quiet title to real estate. Mike Kushner and wife and Steve Kaszebski and wife added as parties defendant. John H. Flancher intervened as party defendant. Amended bill of complaint filed praying for accounting, quieting of title, to have two law judgments declared null and void, and for full and complete equitable relief. Decree settling rights of all interested parties. Plaintiffs appeal. Affirmed.

*Louis Starfield Cohane* and *Regene Freund Cohane,* for plaintiffs.

*Schmalzriedt, Frye, Granse & Frye,* for defendant Kushner, Woeste and Kaszebski.

*John H. Flancher* (*Howard H. Campbell,* of counsel), for defendant Flancher.

STARR, J. This case involves a complicated series of events, transactions, and litigation extending over a period of about 14 years. On May 6, 1926, Howard Racho, while driving an automobile owned by his mother, plaintiff Sophia Racho, was involved in an automobile accident in which defendant Antolina Woeste sustained serious injuries. In April,

1927, defendants Antolina Woeste and her husband John Woeste, by their attorney, defendant John H. Flancher, began separate law actions against plaintiff Sophia Racho and her son Howard to recover damages resulting from such accident. At the time such suits were instituted, Howard was in State's prison, and they were later dismissed as to him. In September, 1927, Sophia Racho was defaulted in each suit for failing to appear and plead. On February 5, 1930, Antolina Woeste obtained a default judgment for $15,000 and her husband, John Woeste, a default judgment for $5,000 against Sophia Racho. The validity of such default judgments is one of the principal questions in the present case.

In March, 1931, executions were issued on both judgments and levied on 76 acres of land in Taylor township, Wayne county, then owned by Sophia Racho, defendant in such law actions and plaintiff in the present chancery action. On May 8, 1931, defendant Archie Montrie purchased from defendants John and Antolina Woeste the law judgments which they had obtained against Sophia Racho, and received written assignment thereof. For such assignment Montrie paid the Woestes $500 in cash and agreed to pay their doctor's bill in the amount of $100 and also the bill of their attorney, defendant Flancher. At the execution sale on May 16, 1931, defendant Montrie purchased the Sophia Racho land for $8,000, which sum was paid by crediting the same on the two judgments.

On May 14, 1932, plaintiffs Racho and her daughter Leola Nelson began the present chancery suit against defendants Archie Montrie, John Woeste, and Antolina Woeste, and notice *lis pendens* was filed in the office of the register of deeds. In their bill plaintiffs alleged ''fraud, collusion and conspir-

acy'' in the obtaining of the two default law judgments and in the execution sale of the lands; and that defendant Montrie had purchased the Woeste judgments and also the land at the execution sale, as agent and trustee for plaintiff Racho.  In their bill plaintiffs asked that an accounting be had between plaintiffs and Montrie; and that plaintiffs' title to the land "be quieted and the clouds removed therefrom."  On June 2, 1932, defendant Montrie filed answer denying that he purchased either the Woeste judgments or the land at the execution sale as agent for plaintiff Racho and alleging that he purchased such judgments and land "for his own use and benefit" and that he was the owner thereof.

At about this point (June, 1932) there intervened a series of transactions and other litigation, extending over a period of several years, which later became involved in the present case.  On June 23, 1932, defendants Woeste entered into a written agreement with Steve Kaszebski, whereby he was to collect the two default judgments from plaintiff Racho, and to receive for his services 50 per cent. of the amount collected.  In May, 1935, defendants Woeste conveyed a ½ interest in the Racho land to said Steve Kaszebski and Katherine Kaszebski, his wife, and in May, 1936, Kaszebski conveyed his interest in the land to his wife.  It also appears that Kaszebski mortgaged his interest in the land to one Bernice Mazol for $200.  In May, 1935, defendants Woeste also conveyed a ½ interest in the Racho land to Mike Kushner and Dora Kushner, his wife, in trade or exchange for an 80-acre farm located in Tuscola county which, according to the trial court's opinion in the present case, was worth $3,000.

On July 15, 1932, defendants Woeste began a chancery action against defendant Montrie, his wife

Edna, and defendant John Flancher, to vacate and set aside their May 8, 1931, assignment to Montrie of their two default judgments. In January, 1933, a decree was entered in the chancery action setting aside such assignment, and in pursuance of such decree Montrie and wife reconveyed the land in question to the Woestes. By such decree Montrie was given a lien on the land for the repayment of certain advances in the amount of $650. Such decree further determined that the Woestes were indebted to defendant Flancher in the amount of $1,000 for legal services and expenses and that such sum should be payable from the proceeds of the sale of the land.

In January, 1937, Steve Kaszebski and Katherine Kaszebski, his wife, and Mike Kushner and Dora Kushner, his wife, were impleaded as parties defendant in the present case. John Flancher also intervened as a party defendant and cross plaintiff. During the proceedings attorney Ezra Frye, representing defendants Woeste, Kushner, and Kaszebski, filed notice claiming an attorney's lien.

In January, 1937, plaintiffs filed amended bill of complaint alleging that Leola Nelson was joined as a party plaintiff because her mother, plaintiff Racho, had transferred the land in question to her; that the two default law judgments were "fraudulently excessive" and were obtained by defendants Woeste through fraud, collusion, and conspiracy; also that such law judgments were void because the circuit judge trying such cases did not hear the testimony taken. In their amended bill plaintiffs charged, in effect, that the execution sale was irregular and void; that plaintiffs' record title to the land was clouded by the levy of executions and the execution sale; and that defendants Kushner and wife and Kaszebski and wife acquired their claimed interest

in the land subsequent to the filing of notice *lis pendens.* Plaintiffs asked that an accounting be decreed with defendant Montrie; that the default judgments taken by defendants Woeste against plaintiff Racho be declared void; and that plaintiffs' title to the land in question be quieted and the clouds removed therefrom.

Defendants' motion to dismiss plaintiffs' bill and amended bill was denied, and all defendants filed answers. The case was tried in July, 1940, before the same circuit judge who had entered the Woestes' default judgments against plaintiff Racho in February, 1930, and who had entered the decree in the chancery suit of defendants Woeste against defendants Montrie and Flancher in January, 1933. The trial court's opinion stated in part:

"The present status of the title has evolved from five law suits contributing directly or indirectly to the confusion. * * *

"It (present case) is further complicated by the hopes of the parties involved that they could salvage a substantial investment in a farm in Taylor township, worth in the good old days $100 an acre, sold in the boom days for $1,000 an acre, and now settled back to approximately its original value. * * *

"On May 6, 1926, plaintiff, Sophia Racho, was the owner of the above-described real estate. She was also the owner of a Ford car, which on that date and while driven by her son, Howard Racho, who lived with her, struck and injured Mrs. Antolina Woeste. Both of Mrs. Woeste's legs were broken above the knees, she had a scalp wound and several body injuries; she spent five weeks in the hospital and was in and out of bed about six months. After four years she testified that her leg and hand pained her and that she was not able to use one foot as well as before. * * *

"The Woestes took their claim to attorney John Flancher who started suits for them. * * *

"Sophia Racho was personally served by a deputy sheriff on August 8, 1927.

"Mrs. Leola Nelson, the other plaintiff herein, and Mrs. Racho's daughter, took the summons in the above law suit to Attorney Bessie McDonald who * * * was also acting as her (Mrs. Racho's) lawyer in her real-estate matters. * * *

"Bessie McDonald never entered her appearance for Mrs. Racho either. Their relationship eventually ended in disagreement and litigation in Racho v. Fowel. * * *

"Attorney Flancher defaulted Mrs. Racho * * * for nonappearance on September 23, 1927, brought the case on for trial on February 5, 1930, made out a prima facie case of negligence, offered the testimony of the attending physician and took judgment in the amount of $15,000 in the suit of Antolina and $5,000 in the suit of husband, John.

"Mrs. Racho complains strenuously that the amount is excessive, out of proportion to the damages suffered by the plaintiff, and that it is not the judgment of the court in that the judge did not weigh the testimony and exercise a personal discretion as was his duty in the absence of a jury, in fixing the amount, and that had he done so the measure of damages would have been much less. *The record of what took place shows a regular proceeding before the judge.* The testimony now of whether the judge listened then is in dispute. * * *

"The Woestes have received $300 in cash and $3,000 in land,— a total of $3,500, for their judgments of $20,000. * * *

"No decree could do exact justice in this case. Years of litigation and negotiations have passed because the parties could not agree upon the value of the property. * * * The plaintiff in her bill prays that:

"'Equity once having taken jurisdiction, it afford full and complete relief to all the parties in accordance with their rights, as in equity and justice it may appear to be.'

"Since the value of the property has been exhausted by these five law suits, it would seem the equitable thing to do.  *  *  *

"Mrs. Woeste suffered a severe and permanent injury.  *  *  *  The judgments of $20,000, however, are too large and should not be permitted to stand in the light of the circumstances surrounding their entry.  By the subsequent events she has recovered $3,500.  This is a fair measure of damages for the two judgments, and they will be reduced to that amount and will be declared satisfied as to the Woestes.  *  *  *

"Archie Montrie has been decreed $650 as a mortgage lien.  This court recognizes it as a valid lien.

"The Kushners paid $2,500 for the land they traded to the Woestes.  Their claims will be allowed in that amount and they will be ordered to surrender the judgment and accept a lien in that amount.

"The Kaszebskis invested $300 in cash and valuable services, in holding the ½ interest in the judgment.  Their claims will be allowed at $500 and they will surrender their judgment for the same (the decree provides that $200 of such sum shall be paid to Bernice Mazol to whom the Kaszebskis pledged their interest as security).

"As to the lawyers who have rendered services in trying to save the rights of their inexperienced clients, we find no evidence whatever of fraud and collusion, but rather a service rendered which cannot be paid adequately out of the present shrunken value of the property.  The $1,350 which Mr. Montrie was to receive out of which to pay Mr. Stafford, will be reduced to $350 for all of which Mr. Stafford will be given a lien.

"The $1,000 which Mr. Flancher was to receive out of the sale and subject to the later negotiations with the clients, will be reduced to $750, or about 1/5 of the satisfied judgment of his clients, and he will be given a lien for it, without prejudice as to his right to demand $250 from the Woestes and a lien on their acquired land, to protect it.

"Mr. Frye  *  *  *  will be allowed an attorney fee of $750, for which he will be given a lien on this property."

A decree was entered as of November 22, 1940, determining the rights of the parties in accordance with the trial court's opinion. Such decree also provided that plaintiffs should have three months from the date thereof within which to redeem the land from the liens given defendants in the total aggregate amount of $5,500; and that, in case plaintiffs failed to pay to defendants such sum, the land be sold to satisfy defendants' liens. Plaintiffs appeal from such decree. This being a chancery case, we consider the same *de novo*.

From the record and briefs it appears that the Racho land in question was bid in by the State of Michigan at delinquent tax sale and, there being no redemption, the State's title became absolute. The land was later sold by the State land office board at scavenger sale to a third party for $5,000; that plaintiffs and defendants have each attempted to acquire the land by matching the scavenger sale bid; and that the land office board's decision as to who is entitled to meet the bid awaits our determination of the present case.

The principal questions requiring our determination are: (1) Were the two default law judgments obtained by defendants Woeste against plaintiff Racho in February, 1930, valid? (2) Could the trial court in the present chancery case decree a reduction of the Woeste law judgments aggregating $20,000 to the sum of $3,500? and (3) Was the decree of the trial court determining other rights of the parties just and equitable?

Plaintiffs contend that the Woeste default judgments are void because obtained through fraud, col-

lusion, and conspiracy between the Woestes, their attorney defendant Flancher, and Attorney McDonald, then representing plaintiff Racho. From the record it appears that in August, 1927, plaintiff Racho was served with declaration and rule to plead in each law action and that her daughter, plaintiff Nelson, delivered the same to Attorney McDonald. Plaintiff Racho had automobile accident insurance with the Central Mutual Auto Insurance Company, which has since become insolvent. The accident was reported to the insurance company, and Attorney McDonald discussed the Woeste suits with the attorney for the company. Attorney McDonald assured plaintiffs that she would take care of the cases and that they "had nothing to worry about." Plaintiffs contend, in substance, that they relied upon Attorney McDonald and on the insurance company and its attorneys, and that they did not learn of the default judgments until about a year after the same were entered. They claim that the matter of such default judgments and levy on their land was first called to their attention in March, 1931, by defendant Montrie who informed them that he had purchased the judgments from defendants Woeste. Plaintiffs then interviewed Attorney McDonald and, according to their testimony, were again assured that they had nothing to worry about and that she would look after the matter.

Plaintiffs testified, in effect, that it was understood and agreed with defendant Montrie that he had purchased the Woeste judgments and would purchase the land at the execution sale as agent for plaintiff Racho; that Montrie was to sell the land and from the proceeds get back the amount he had paid the Woestes together with the amounts he had paid in connection with the execution sale, the balance to belong to plaintiff Racho. Plaintiffs also

testified that, subsequent to Montrie's purchase at the execution sale, plaintiff Racho gave him an option to purchase her interest in the land. In his testimony defendant Montrie denied that he purchased the Woeste judgments and the land at the execution sale as agent for plaintiff Racho and claimed that he purchased the judgments and land for his own benefit; that he took an option from plaintiff Racho to purchase her equity of redemption from the execution sale; that he obtained an offer for the Racho land of $14,000 cash together with another piece of property assessed at $18,000, but that such offer was declined by plaintiff Racho. As hereinbefore mentioned, the assignment from the Woestes to Montrie of the default judgments against plaintiff Racho was set aside by chancery decree in January, 1933.

The Woestes had begun their law actions against plaintiff Racho in 1927, and the default judgments were not taken until February, 1930. Although plaintiff Racho may have relied to some extent upon Attorney McDonald and upon the insurance company and its attorneys to represent and protect her in connection with the Woestes' suits, we cannot say that she was entirely free from negligence in not giving such suits further personal attention. Attorney Flancher, who represented the Woestes, testified that, prior to the entry of the default judgments in February, 1930, he had no contact or interviews with either plaintiffs or Attorney McDonald regarding the pending suits. The evidence clearly does not establish the alleged fraud, collusion or conspiracy by or between the Woestes, Attorney McDonald, and Attorney Flancher in obtaining the default law judgments.

Plaintiffs contend further that the Woestes' default judgments against plaintiff Racho were void

because the testimony on which such judgments were based was not heard by the trial judge. The record indicates that the testimony was taken at a table in the court room and was recorded by the official court reporter whose report of the proceedings was put in evidence in the present case. The reporter and others, who were present in the court room when such default judgments were taken, testified in substance that they had no independent or definite recollection as to just what occurred at that time. A witness in the present case who had testified for the Woestes when the judgments were taken states, "The judge was here when I testified." As the present case was not tried until about 10 years after such default judgments were taken, it is not surprising that the testimony is indefinite and uncertain as to just what occurred at that time in the court room. There was no satisfactory proof that the trial judge did not hear the testimony presented. In the absence of positive evidence indicating otherwise, we are disposed to assume the regularity of the proceedings and the validity of the judgments. We conclude that such default judgments were valid and should not be set aside in this present chancery suit.

Plaintiffs also contend that the trial court sitting in chancery could not reduce the Woestes' law judgments from the aggregate amount of $20,000 to $3,500. We recognize the general rule that a court of equity will not interfere with a law judgment except in case of fraud or when "an injustice has been done."

"Nor can it be questioned that courts of equity in proper cases may afford relief from judgments at law, where the facts are such as to invoke its jurisdiction." *Becker* v. *Welch,* 206 Mich. 613, 616.

"A judgment at law may be vacated by a court of equity in a proper case, but the exercise of such jurisdiction is rare. It is only exercised after it has been made to appear clearly that an injustice has been done." *Finn* v. *Adams,* 138 Mich. 258, 261 (4 Ann. Cas. 1186).

"It is well understood that before a chancery court will interfere with a judgment at law it must be made very clearly to appear that an injustice has been done." *Mueller* v. *Marsh,* 116 Mich. 375, 378.

See, also, *Barr* v. *Payne,* 298 Mich. 85.

"It is best, as a matter of public policy, that a judgment obtained in a court of law should stand, unless it is manifestly against conscience." *Cleveland Iron Mining Co.* v. *Husby,* 72 Mich. 61, 63.

We have hereinbefore concluded that the default judgments against plaintiff Racho were valid. As she and her daughter, plaintiff Nelson, were not prejudiced by the decreed reduction of such judgments from $20,000 to $3,500, and as other parties have not appealed, there is no occasion for determining the question as to the authority of the trial court to make such reduction.

Plaintiffs sought the aid of a court of equity and in their amended bill prayed: "That equity * * * afford full and complete relief to all of the parties." During the period of about 14 years the factual situation had become so confused and involved that the trial court was fully justified in determining the rights of all parties and also the fees of attorneys, and thereby concluding the prolonged litigation. From our study of the record and briefs we conclude that the trial court justly and equitably determined the rights of all parties involved.

The decree of the trial court is affirmed, provided, however, that (as allowed in such decree) plaintiffs

shall have three months from the filing of this opinion within which to redeem the land from the liens given defendants in the aggregate amount of $5,500. Defendants shall recover costs.

BOYLES, C. J., and NORTH, BUTZEL, and BUSHNELL, JJ., concurred with STARR, J.

WIEST, J. (*dissenting*). I am of the opinion the bill should have been dismissed by the circuit judge as requested in the answer filed and, upon this appeal by plaintiffs, we should make such disposition of the case. But it is said that no defendant is complaining of the decree. That is the origin of much bad law and I cannot join in making the opinion of Mr. Justice STARR a precedent for future guidance.

A judgment at law of 10 years standing, upon which execution has issued, levy upon land made, sale had, with no redemption, and deed executed, cannot be set aside or reduced in amount by the court in the absence of fraud in obtaining the judgment. There was no fraud in obtaining the judgment and no power in the court to re-adjudicate the case and pass upon subsequent rights of third parties acquiring interests thereunder.

The decree was a nullity and should be reversed and the bill should be dismissed, without costs.

CHANDLER and SHARPE, JJ., concurred with WIEST, J.