WM. H. FISHER & SON *vs.* JOSEPH B. ANDREWS.

*Sale of Goods—Memorandum Under the Statute of Frauds Must State the Terms Agreed Upon— Usage as to Time of Delivery and of Payment and as to Right of Inspection—Instructions—Evidence.*

Evidence is admissible to show that a signed memorandum of a sale of goods does not contain all of the terms verbally agreed upon by the parties, not for the purpose of contradicting the written agreement, but to show that it does not fulfill the requirements of the seventeenth section of the Statute of Frauds.

The memorandum of a sale under the Statute of Frauds need not state a time for the delivery of the goods sold, if no time was fixed in the parol agreement of the parties, because in such case the law implies a delivery within a reasonable time or according to the usage of the particular trade if there be one. But if the parties did, agree upon a time of delivery, then it must be set forth in the memorandum.

If the time and mode of payment be agreed upon, then the memorandum of sale must state these terms; otherwise it is insufficient under the statute.

When one of the terms of sale is that the goods should be " as per sample delivered," that must be set forth in the memorandum as a delivery of goods corresponding with the sample is a performance of the contract.

A memorandum of sale signed by the parties was as follows : "Sold to F. & Son 600 cases, 2nd June peas, Andrews brand, at 62½ per doz. del. in Baltimore, packing of 1899, shipment to be made as soon as

ready." Defendant shipped the peas and sent a draft for the price attached to the bill of lading, which plaintiff refused to pay and the peas were then sold to another party. In an action for breach of the contract plaintiff testified that the above-mentioned writing embraced all of the terms of sale verbally agreed upon between the parties and also offered evidence to show a custom among merchants to allow an inspection of peas sold before payment therefor and also a custom as to time of payment when the contract is silent as to this matter. The defendant testified that the agreement between them was for payment "net cash on delivery *f. o. b.* Baltimore," and that before signing the memorandum several cans were opened and that those to be delivered were to be equal in quality with these samples then opened and delivered to the buyer. A prayer offered by the plaintiff instructed the jury that if they found that no agreement was made as to the right of the buyer to inspect the peas before payment and that the memorandum of sale was silent on that point, then if the jury found the existence of a usage among merchants in Baltimore to allow such inspection, the plaintiff was entitled to make the same. *Held*,

1st. That this prayer should have been granted without a modification requiring the jury also to find that the written memorandum embraced all the terms of sale, because evidence as to a usage relating to inspection was admissible, and the plaintiff was entitled to have the jury instructed on that subject.

2nd. That a prayer to the effect that if the jury found there was no agreement between the parties as to when payment was to be made, then a general custom on the subject would be controlling, should not have been modified by adding "provided they shall find that the written memorandum offered in evidence embraced all the terms of sale."

In an action by the buyer against the seller for non-delivery of certain cases of canned peas, when the plaintiff has offered evidence as to the value of certain peas which he alleged were similar to those defendant agreed to sell him, the defendant is entitled to show, as affecting damages, that the peas actually bought by plaintiff by sample, but subsequently delivered to another purchaser, were not of the same quality as those referred to in the plaintiff's evidence.

When a bill of exceptions sets forth that certain exceptions to the rulings of the Court were taken, it will be assumed that they were seasonably taken, at the trial of the cause, and not afterwards.

Appeal from the Circuit Court for Dorchester County (LLOYD, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Thomas W. Simmons*, for the appellants.

*Frederick H. Fletcher* (with whom was *John R. Pattison* on the brief), for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellants sued Joseph B. Andrews, trading as J. B. Andrews & Co., for damages alleged to have been sustained by the former by the failure of the latter to deliver six hundred cases of peas sold by him to the plaintiffs. The first question presented by the record is the ruling of the Court below in sustaining a demurrer to the first count in the declaration, but, as the second count is based on the contract relied on by the appellants, that ruling is not material, although we are satisfied it was correct.

The first exception was taken to the action of the Court in permitting the defendant to introduce the evidence of a witness, Andrew Reiter, tending to prove that four hundred and thirty cases of peas purchased by him of the defendant " did not fully measure up, as to quality and condition, to the sample exhibited to him in Court." The defendant had shipped those cases to Baltimore for the appellants and had drawn on them for the contract price. They refused to accept the draft, which was attached to a bill of lading and presented through one of the banks—one member of the firm giving as his reason for not paying it that they wanted the remainder of the six hundred cases shipped before they paid any draft, and the other member stating that it was not customary to pay drafts until the goods were delivered and could be examined. On the same day they wrote assigning those reasons, they were notified by the steamboat company of the arrival of the four hundred and thirty cases, and, after consulting their attorney as to their right to accept them without releasing the appellee from delivering the rest, they inspected them and finding them satisfactory tried to locate the draft and bill of lading. They failed to do so, as they had not made a memorandum of the bank which held them, and then sent their check to the defendant for the amount of the bill rendered. The defendant returned the check and stated that acting on the letters of the plaintiffs.

they had notified their broker to sell the peas, but if the plaintiffs could find the draft they could pay it and get possession of them. They were unable to find it and mailed a certified check for the amount, which was also returned by the appellee. The peas remained on the wharf of the steamboat company from June 23rd to the 1st of July, 1899, when they were delivered to Mr. Reiter whose firm purchased them. One of the plaintiffs had testified that after he had made the purchase for his firm he was shown a pile of cans containing peas which the defendant had told him were of the description of those he had purchased, and that, with the consent of the defendant, he took two cans from the pile as samples of those he had purchased. After he had heard of the sale of the peas to Andrew Reiter & Company he gave one of the sample cans to a broker to ascertain what peas of a like kind, condition and quality, could then be purchased for. The plaintiffs called that broker and others as witnesses to prove the value of peas like that sample and also produced the other can taken by him to the witnesses in Court and offered evidence tending to prove the market value of such peas. The object of the testimony was to show what damages the plaintiffs had sustained by the alleged breach of contract on the part of the defendant.

Under those circumstances the defendant called Mr. Reiter, who had purchased the four hundred and thirty cases of peas, to show that they " did not fully measure up in quality and condition to the sample exhibited in Court." It must be remembered that the plaintiffs had inspected the four hundred and thirty cases at the wharf in Baltimore, and were satisfied with them, but they had undertaken to prove the amount of damages sustained by them by proving the market value of such peas as were in the two cans he had gotten from the defendant. The offer of the defendant was therefore evidently intended to meet that evidence, by showing that the peas purchased by the plaintiffs were not of the quality of the two cans on which the plaintiffs based their evidence, but were inferior to them and hence the loss to the plaintiffs was not as great as they attempted to show. For that purpose we think the tes-

timony of Mr. Reiter was admissible.    Mr. W. H. Fisher, the
member of the firm who made the purchase, testified that it
was "after the purchase had been made" he was shown the
pile of cans from which he obtained the two, and as he had
inspected those in Baltimore and pronounced them satisfactory,
the evidence offered by the defendant was relevant, as the
plaintiffs claimed to have purchased "second June peas,
'Andrew's Brand,' at 62 ½ cents per dozen cans, to be deliv-
ered in Baltimore, packing of 1899," and if the four hundred
and thirty cases answered that description, which they appar-
ently did, as the plaintiffs were satisfied with them, it was
proper to show that they were not of the same quality and
condition as those on which the testimony of the plaintiffs as
to their market value was based.    The theory of the plaintiffs
seemed to be that the peas were not sold by sample and one
of the special objections to the defendant's second prayer was
that there was no legally sufficient evidence to show such a
sale.    If that view had been adopted by the Court or the jury
had so found this evidence was manifestly relevant.

It is contended on the part of the appellee that the second
bill of exceptions, which embraces the rulings of the Court on
the prayers, cannot be considered by us, because it does not
affirmatively appear that the exceptions were "seasonably
taken."    But we cannot agree with that contention.    The first
bill of exceptions commences with the statement "At the trial
of this cause" and then, after stating the testimony and the
action of the Court referred to in the first bill of exceptions,
the second is connected with it in the usual form, and after
stating other evidence it proceeds "At the conclusion of the
testimony the plaintiff, by his counsel, offered the following
three prayers," which are set out in the record, as are the two
of the defendant, together with the action of the Court thereon.
It shows that the plaintiffs excepted specially to the first and
second prayers of the defendant for reasons that are stated,
and that they also "excepted generally to the granting of both
of defendant's said prayers."    While the language used in stat-
ing the exception to the ruling on the plaintiffs' prayers is

somewhat unusual, it sufficiently shows that the exceptions were intended to be to the modification of those prayers by the Court and to the granting of those offered by the defendant. There is nothing to suggest that the exceptions were not taken during the trial, as the rulings were made, but on the contrary the record when taken as a whole shows they were. We must therefore consider the rulings embraced in that (the second) bill of exceptions.

The first and second prayers as offered by the plaintiffs were modified and those offered by the defendant were granted. The *narr.* alleged that there was a written contract. W. H. Fisher, one of the plaintiffs, testified that on the 10th of June, 1899, the contract of purchase was made by him and as soon as made a contract or memorandum of sale was prepared and signed by J. B. Andrews & Co. and delivered to the plaintiffs,. and that a duplicate thereof was then and there signed by the appellants and delivered to the appellee. The memorandum given the appellants was as follows : " Hurlock, Md., June 10th, '99. Sold to Mess. W. H. Fisher & Son six hundred (600) cases, 2nd second June peas, 'Andrews Brand,' at 62 ½ per doz., del. in Baltimore, packing of 1899, shipment to be made as soon as ready." That was signed by the appellee. The two papers thus constituted what are ordinarily called bought and sold notes, but were signed by the parties themselves and one delivered to each by the other, instead of being executed by a broker, as is often the case. It is clear from the testimony of both Mr. Fisher and Mr. Andrews that the contract was a verbal one and that these papers were intended simply as a memorandum of the sale and not the contract itself. According to the evidence of Mr. Fisher the bought and sold notes embraced all the terms of the verbal contract, but Mr. Andrews testified that the terms verbally agreed upon were " net cash on delivery, *f..o. b.* Baltimore," that before the signing of the memorandum of sale several cans of peas were opened and it was agreed that he would deliver them "according and equal in quality to samples of two pound, second June peas, ' Andrews Brand,' packing of 1899," then opened and

inspected by Mr. Fisher, who took the two cans with him, "having bought as per sample delivered." Mr. Fisher had testified that he was shown the cans after the purchase had been made, and he then took the two, as a sample of what he had purchased. He also said that nothing was said as to the time at which the peas were to be paid for, or regarding the right of the plaintiffs to inspect them after their arrival in Baltimore, before payment. The plaintiffs also offered evidence tending to show a custom among packers of peas and wholesale merchants of Baltimore, to allow an inspection before payment and also as to the time of payment, when the memorandum of sale was silent on those subjects.

The principal object in making a memorandum of sale, in mercantile transactions, is to comply with the requirements of the Statute of Frauds and the general rule is that if the memorandum does not embrace all the material terms of the verbal contract it is not sufficient. It frequently happens, therefore, that in such cases parol evidence is admitted, not for the purpose of varying or contradicting a written agreement, as was suggested by the appellants that the appellee was attempting to do, but to show that what professed to be a memorandum of the contract did not in fact truly state it, but had omitted some essential terms that had been agreed upon in the verbal contract. The case of *Kriete* v. *Myer & Co.*, 61 Md. 558, is a good illustration of the sufficiency of such memorandum. There a sold note was given by the agents of the vendor and it was held that the memorandum of sale need not state the time of the delivery, *if no time was fixed in the parol agreement*, as the law would imply that it is, in such case, the duty of the seller to deliver the goods in a reasonable time, or if there be an established custom among merchants, dealing in such goods, regulating the time of delivery, it will be controlled by such custom. But it was further held that if a time for delivery be fixed in the verbal agreement of sale, such time must be incorporated in the memorandum and, if it is not, it is insufficient.

The plaintiffs' first prayer asked that the jury be instructed that if they found that no agreement was made as to the right

to inspect the peas before payment, and that the memorandum of sale was silent on that point, then the plaintiffs were entitled to inspect them before being compelled to pay for them, if the jury also found that there was a general custom among packers of peas in the State of Maryland, and the wholesale merchants of Baltimore, to allow such inspection, before being compelled to pay for peas, bought under a contract in which nothing is said about the right to inspect.   The Court modified the prayer by requiring the jury to also find " that the written memorandum offered in evidence embraced all the terms of sale."   That modification imposed on the appellants a burden which the circumstanstances did not justify.   The prayer had special reference to the one subject—inspection—and the appellants were entitled to have the jury instructed on that subject.   The cases of. *Kriete* v. *Myer & Co.*, *supra*, and *Williams* v. *Woods*, *Bridges & Co.*, 16 Md. 251, as well as others, show that it is permissible to offer the usage or custom in such matters and to require the jury to find that the written memorandum offered in evidence embraced all the terms of sale was erroneous.   In the first place it was liable to mislead them, as there are some terms which the law will imply or may be established by proof of custom and the jury was not told what kind of terms were required to be in the memorandum, and then it was calculated to divert the jury from the subject intended to be submitted to it by the prayer as offered, which, as we have said, was for it to pass on.   It may be that it was for the Court, and not for the jury, to determine whether the memorandum of sale was silent as to the right to inspect, but, as it was in point of fact silent, the appellee could not have been injured by having that inserted in the prayer, and the appellants were assuming a greater burden in that respect than they were required to do, when they left that to the jury.   The prayer expressly required the jury to find that no agreement was made as to the right to inspect, and therefore there was no necessity to make this modification so as to cover that point.   The same may be said about the plaintiffs' second prayer, which had reference to the time of payment.   That was to the effect that if the jury

found there was no agreement between the parties as to when payment was to be made and that a general uniform custom prevailed, then it should govern and control the time of payment. The Court qualified it by adding "provided they shall find that the written memorandum offered in evidence embraced all the terms of sale." What we have said about the first prayer applies to this and there was error in so modifying it.

The defendant's first prayer was intended to apply to the testimony of the defendant that one of the terms of the verbal agreement was "to pay net cash and upon delivery of said peas." The theory of the prayer is that, as that was omitted from the memorandum of sale, if the jury found such an agreement, the memorandum was insufficient, because it did not embrace all the material terms of sale. As this action was brought on the memorandum of sale, it follows that there could be no recovery unless it was sufficient and as it was essential to include such terms as that, if agreed upon, the prayer was properly granted.

The defendant's second prayer was also properly granted. If it be true that one of the terms of the verbal agreement was "that the peas so sold should be as per sample delivered, or that said peas should be equal in quality to sample delivered," that was material and should have been inserted in the memorandum to make it sufficient. In *Gunther* v. *Atwell*, 19 Md. 157, it was said: "strictly speaking a contract of sale by sample is not a warranty of quality, but an agreement of the seller to deliver, and of the buyer to accept, goods of the same kind and quality as the sample. The identity of the goods sold in kind, condition and quality, with that of the sample, is of the essence of the contract; and where the goods sold do not correspond with the sample there would seem to be no performance of the contract." The converse of that must be true that if goods are furnished which do so correspond, there would be a performance of the contract. It is possible that all the "second June peas, 'Andrews Brand,' packing of 1899," would not be of the same quality and hence, if it be true, as testified by Mr. Andrews, that the appellants purchased as per

sample delivered, or it was agreed that the peas should be equal in quality to the sample delivered, it was a material omission to leave that provision out of the memorandum, and hence was within the rule above stated—that if the memorandum of sale does not embrace all the material terms of the verbal contract, it is insufficient.

It may be true that receiving samples may, under certain circumstances, be deemed an acceptance as part of the bulk to satisfy the Statute of Frauds, *Benj. on Sales* (2 ed.) sec. 141, etc., but this suit, as we have seen, was on the memorandum of sale and there could be no recovery on that, unless it was sufficient.

It is not necessary to discuss more at length the special exceptions to the defendant's prayers, but from what we have said above it will be seen that there was evidence that the peas were sold by sample, as the defendant so testified and hence that was properly submitted to the jury to pass on.

For error in modifying the plaintiffs' first and second prayers the judgment will be reversed.

> *Judgment reversed, with costs to the appellants, and new trial awarded.*

(Decided November 21st, 1901.)