MILLER v. TANNERS' SUPPLY CO.

1. CONTRACTS—OFFER AND ACCEPTANCE—CONSTRUCTION.
    A letter from defendant to plaintiffs informing them that B. H. will deliver it several hundred cords of 16-inch wood on cars at C., and stating, "When they begin the delivery of this wood, if you will advise us of the amount which you would like to have us deliver to you we will accept your order, subject to their delivery, at $1.35 per cord on cars at " C., and "If you will advise us by letter, or written order, from time to time, of your needs in this line, we will be pleased to turn over such cars as they may load from time to time," is an offer to sell such quantity of the wood as plaintiffs might desire to buy at the price quoted, subject to B. H. delivery at C.; and an acceptance of such offer does not bind plaintiffs to take all the wood coming to defendant from B. H.

2. SAME—SUFFICIENCY OF ACCEPTANCE.
    A proposal to furnish "16-inch wood" coming to defendant under a contract with B. H. is sufficiently accepted by a letter in which plaintiffs agree to take "beech and maple block-wood" where it appears that defendant's contract with B. H. was for beech and maple blockwood.

3. STATUTE OF FRAUDS—SALES OF GOODS—DESCRIPTION OF GOODS
—EXTRINSIC EVIDENCE.

Where a proposal in writing is to sell a quantity of wood com-
ing to the seller under a certain contract, and the written
acceptance is to take a certain quantity of beech and maple
blockwood coming to the seller under the contract referred
to, it may be shown by parol that the contract referred to
covered beech and maple blockwood, though the contract
created by the offer and acceptance is one which the statute
of frauds requires shall be in writing.

4. PARTIES—PLEADING—AMENDMENT—FORMAL MATTERS—EFFECT.

A claim by defendant, in an action for breach of contract, that
plaintiff partnership has changed in its personnel since the
contract was made, and that plaintiffs cannot recover with-
out showing an assignment from the original partners, which
cannot be shown because not pleaded, at most entitles the
defendant to ask that the declaration be amended by averring
the assignment, an amendment which is a mere matter of
form the failure to make which under section 10270, 3 Comp.
Laws, does not entitle defendant to a reversal.

5. EVIDENCE—ADMISSION—HARMLESS ERROR.

Errors in admitting evidence the exclusion of which could not
have changed the result will not be considered.

Error to Kent; Perkins, J.   Submitted October 15,
1907.   (Docket No. 61.)   Decided December 10, 1907.

Assumpsit by Henry B. Miller and Harry E. Miller,
copartners as H. B. Miller & Son, against the Tanners'
Supply Company, Limited, for breach of a contract for
the sale of certain wood.   There was judgment for plain-
tiffs, and defendant brings error.   Affirmed.

*James J. Danhof* (*W. E. Ryan,* of counsel), for ap-
pellant.

*Clapperton & Owen,* for appellees.

CARPENTER, J.   This suit was tried in the circuit
court without a jury, a finding of facts made, and judg-
ment rendered for the plaintiffs.   We quote from said
finding of facts:

"*First.* November 18, 1903, Harry E. Miller and Richard B. Vos composed the firm of Miller & Vos, with whom Henry B. Miller was associated as a silent partner. Later [January 2, 1904] Henry B. Miller purchased the interest of Vos in the business, and the firm was thereafter styled H. B. Miller & Son.

"*Second.* On the date mentioned, the defendant and Miller & Vos were and had been engaged in the business of buying and selling wood for and in the Grand Rapids market, and later, the firm of H. B. Miller & Son continued in the same business.

"*Third.* November 19, 1903, the defendant and Miller & Vos entered into a written contract whereby the latter were to buy for a consideration and upon the terms therein expressed, a certain wood yard from the defendant company. Miller & Vos took possession of the wood yard and thereafter payments were made from time to time, as provided in the contract, either by Miller & Vos or by H. B. Miller & Son, until the full purchase price was paid, whereupon a bill of sale dated January 13, 1904, was duly executed and delivered by the defendant company to H. B. Miller & Son.

"*Fourth.* At the time of the execution of the contract for the sale of the wood yard, the defendant made certain representations and offers relative to certain wood it had contracted for with the Belding-Hall Co. to be delivered to it at Chippewa Lake, Michigan, which representations and offers were relied upon by the purchasers and constituted a part of the consideration which entered into the wood yard contract. These representations and offers were set forth in a communication delivered to Messrs. Miller & Son on the execution of that contract and reads as follows:

"'GRAND RAPIDS, MICH., Nov. 19, 1903.
"'Messrs. MILLER & VOS,
"'City.

"'*Gentlemen:* We have an agreement with Belding-Hall Co. that they will deliver us several hundred cords of 16-inch wood on cars at Chippewa Lake.

"'When they begin the delivery of this wood, if you will advise us of the amount which you would like to have us deliver to you, we will accept your order, subject to their delivery, at $1.35 per cord on cars at Chippewa Lake, Mich.   *   *   *

"'If you will advise us by letter, or written order, from time to

time, of your needs in this line, we will be pleased to turn over such cars as they may load from time to time.

<blockquote>
" 'Yours very truly,
<br>(Signed)    " 'TANNERS' SUPPLY CO., Ltd.,
<br>" 'C. F. Young, Mgr.'
</blockquote>

" *Fifth.* The following letters were written to the defendant company from time to time by Miller & Vos and by the plaintiffs, H. B. Miller & Son:

<blockquote>
" 'GRAND RAPIDS, MICH., Dec. 9, 1903.
</blockquote>

" 'TANNERS' SUPPLY CO., Ltd.,
<br>" 'Grand Rapids, Mich.

" ' *Gentlemen:* We are now ready for a few cars of the Belding-Hall wood at the price mentioned in your letter to us of 11–19—'03, f. o. b. Chippewa Lake.

<blockquote>
" 'Yours respectfully,
<br>(Signed)    " 'VOS & MILLER.'
</blockquote>

<blockquote>
" 'GRAND RAPIDS, MICH., Jan. 25, 1904.
</blockquote>

" 'TANNERS' SUPPLY CO., Ltd.,
<br>" 'Grand Rapids, Mich.

" ' *Gentlemen:* We must again ask you to commence shipping of the Belding-Hall wood from Chippewa Lake. We have made arrangements to take care of all of their wood, seven or eight hundred cords. In fact we are depending on this amount from you people and have not arranged for other wood which we might of purchased. Wish you would make a desperate effort to get this wood coming, as we have only about sixty days more for sale of blockwood this reason.

<blockquote>
" 'Yours respectfully,
<br>(Signed)    " 'H. B. MILLER & Son.'
</blockquote>

<blockquote>
" 'GRAND RAPIDS, Mich., Mar. 28, 1904.
</blockquote>

" 'TANNERS' SUPPLY CO., Ltd.,
<br>" 'Grand Rapids, Mich.

" ' *Gentlemen:* We have relied upon our arrangement with you for the Belding-Hall beech and hard maple blockwood as set forth in your letter of November 19, 1903, and have been greatly disappointed and suffered inconveniences and loss because it was not delivered during the early winter according to our understanding, as we depended upon it and had to buy at higher prices. We can still use all the wood or as much of it as you can deliver from now to April 16, 1904, but we cannot take it after that time and season We hope you can still deliver it within the time named, although it would have been much better for us had you delivered it in December and January.

" ' Kindly let us know at once how much of the wood we can depend upon.

" ' Yours respectfully,

(Signed)    " ' H. B. MILLER & SON.'

" *Sixth.* On the change of the firm name from Miller & Vos to H.. B. Miller & Son, the defendant company continued its negotiations with the latter firm as the successors of and as having been substituted for the former firm, and dealt with them as such, expressly continuing the arrangement and offer theretofore made.

" *Seventh.* On account of snow blockades, and for other reasons, the Belding-Hall Co. did not begin the delivery on the Chippewa Lake wood to the defendant company on the cars at Chippewa Lake until March 24, 1904.
*    *    *

" *Eighth.* That March 31, 1904, the defendant company prepared for and requested the plaintiff to sign the following order, which was refused.

" ' GRAND RAPIDS, MICH., Mar. 31, 1904.

" ' TANNERS' SUPPLY CO., Ltd.,

" ' Grand Rapids, Mich.

" ' *Gentlemen:* We agree to accept from you during the spring of 1904, at such time as fast as you are able to have the wood loaded, 700 to 800 cords of 16-inch fuel wood at $1.35 per cord, f. o. b. cars Chippewa Lake.

" ' In agreeing to purchase this wood at $1.35 per cord f. o. b. cars Chippewa Lake, Mich., we purchase the same subject to delays of the railroad company in providing empty cars for loading the wood, and for the delay in handling the cars into Grand Rapids after they are loaded.

" ' If you deliver to us, or upon our order, any part of the 700 or 800 cords of wood, we understand that it binds us to the acceptance of the whole amount of 700 or 800 cords, provided you wish to deliver the same, and the failure of the railroad company to deliver all of the wood in Grand Rapids as promptly as we might expect and wish cannot be used by us as an excuse for refusing to accept any of the earlier delivery.

" ' Yours very truly,'

" *Ninth:* April 2, 1904, plaintiffs wrote the defendant the following letter:

" ' April 2, 1904.

" ' TANNERS' SUPPLY CO., Ltd.,

" ' Grand Rapids, Mich.

" ' *Gentlemen:* We are still depending on you for the Belding-

Hall blockwood. In fact we must again ask you to turn over to us this wood as fast as it arrives, as we need it very much as the yard is entirely empty of blockwood. We have also contracted a part of their wood to other parties and they are depending on it. We will take all of the wood if the last of it is turned over to us on or before April 20, 1904, but we cannot accept any after that date and season, as the weather will be undoubtedly warm by that time and the party that is to take a part of the wood will not agree to take any after the date mentioned.

" 'Now, gentlemen, we only wish to be fair in the matter as we have been with you in all others, and will accept all that you can deliver up to April 20, 1904, if you will turn over all as fast as it arrives, but do not feel that we can afford to take the chance of disposing of the wood later. We sincerely hope that this proposition will be perfectly satisfactory to you, but if it is not satisfactory we will abide by our former arrangements with you of November 19, 1903.

" 'Yours respectfully,
(Signed)    " 'H. B. MILLER & SON.'

" *Tenth.* All of the wood referred to in the following paragraph was received by the defendant company and sold to various other wood dealers in Grand Rapids than the plaintiffs.

" *Eleventh.* That the quantity of wood delivered to the defendant company at Chippewa Lake, Mich., by the Belding-Hall Co. prior to and including April 16, 1904, was 280⅔ cords.

" *Twelfth.* That the difference between the market value of like wood at Chippewa Lake, Mich., and the contract price of the wood in controversy at the time of the breach of the contract of delivery was 50c per cord."

From these facts the trial court found the following conclusions of law :

· "*First.* That the defendant's letter of November 19, 1903, constituted an offer to sell to Miller & Vos such quantity of the Chippewa Lake wood as they might desire to buy at $1.35 per cord, subject to Belding-Hall Co. delivery at Chippewa Lake.

"*Second.* That the letter of March 28, 1904, supplemented by the letters that had preceded it, and the oral communications shown to have been had between the parties, constituted an acceptance of the offer, and constituted a binding agreement on the part of the de-

fendant company to deliver to the plaintiffs all wood delivered to it up to and including April 16th following.

"*Third.* That there had been no repudiation or withdrawal of the offer of November 19, 1903, prior to its acceptance of March 28, 1904, after the delivery of the wood to the defendant company by the Belding-Hall Co. had begun, and that said offer and arrangement was expressly continued and extended to the plaintiff.

"*Fourth.* That the memorandum order prepared by the defendant for the plaintiffs to sign on March 31, 1903, contained terms and conditions not included in the original offer of sale and its acceptance, and that the plaintiffs were justified in not signing it.

"*Fifth.* That the plaintiffs are entitled to recover one hundred and forty-one and 31-100 dollars ($141.31) with interest thereon from the time of said breach, amounting to one hundred and fifty-three and 31-100 dollars ($153.31)."

1. The most important question in the case arises from defendant's contention that plaintiffs' letter of March 28, 1904, is not an acceptance of its proposition of November 19, 1903. Many of the arguments advanced in support of this contention assume that plaintiffs were bound to take all the wood covered by the Belding-Hall contract. This assumption is erroneous. We agree with the learned trial judge that "defendant's letter of November 19, 1903, constituted an offer to sell such quantity of the Chippewa Lake wood as they might desire to buy at $1.35 per cord, subject to Belding-Hall Co. delivery at Chippewa Lake."

A more doubtful question arises however from the description of the wood as "beech and hard maple blockwood" in the letter of acceptance, whereas in the proposition the wood is simply described as "16-inch wood." Defendant argues that under its proposition it might deliver any "kind of wood fit for fuel such as beech, ash, elm and oak, as well as beech and maple." This argument is not entirely sound. Defendant proposed to sell not any "kind of wood fit for fuel," but part of the particular wood covered by its agreement with the Belding-

Hall Co. If the wood covered by that agreement was "beech and maple blockwood"—and this is a fact which might be shown by parol, though the statute of frauds required defendant's agreement to be in writing (see *Eggleston* v. *Wagner*, 46 Mich. 610)—there is no force in the objection under consideration. In that case, plaintiffs in accepting defendant's offer to sell "beech and maple blockwood" did accept its offer to sell the wood described in the Belding-Hall Co. contract. It cannot be said that any witness testifies in positive terms that the Belding-Hall Co. wood was beech and maple blockwood, but there is evidence from which that inference may be drawn. For instance, defendant's manager, in stating the objections to plaintiffs' letter of March 28th, did not claim that it did not properly describe the wood contracted to be sold, and plaintiff Henry B. Miller testified that one reason why he declined to sign the acceptance prepared by defendant was "that it stipulated fuel wood, which could be any kind of wood, instead of beech and maple blockwood," thereby implying that the wood contracted was beech and maple blockwood. We therefore think that the trial court was justified in finding that plaintiffs' letter of March 28, 1904, was an acceptance of defendant's offer of November 19, 1903.

2. It is contended that as defendant's offer of November 19, 1903, was addressed to Miller & Vos, plaintiffs can base no contract rights thereon, except by obtaining an assignment from Miller & Vos, and that as such assignment is not averred in the declaration, it cannot be proved in this case. This objection under the circumstances as set forth by this record is a purely technical one. Plaintiffs, two of the partners of the firm of Miller & Vos, had to the knowledge of defendant acquired, long before suit was commenced, all the rights of the third partner Vos. The most that defendant could ask was that the declaration be amended by averring the assignment. The failure to make that amendment was a mere matter of form which under section 10270, 3 Comp.

Laws, does not entitle defendant to a reversal of the judgment.

3. It is contended that the trial court erred in admitting certain evidence offered by plaintiffs. We do not consider this complaint because the result would not have been different had the evidence under consideration been excluded.

Judgment affirmed.

McALVAY, C. J., and OSTRANDER, HOOKER, and MOORE, JJ., concurred.