BAZEL D. BATTIN, Appellant, v. MERCHANTS STATE BANK OF CORRECTIONVILLE, Executor, et al., Appellees.

HUSBAND AND WIFE: Marriage Settlements—Antenuptial Contract—Insufficiency. A written instrument purporting to be an antenuptial contract waiving all interest which each of the contracting parties would have after marriage in the property of the other, but shown to have been actually signed *after* marriage, will not bar such property interest when the instrument neither recites (1) that it was executed for the purpose of furnishing evidence of a previous antenuptial oral contract nor (2) that it was executed in consideration of a previous oral antenuptial contract. (See Book of Anno., Vol. 1, Sec. 11285, Anno. 43 *et seq.*; Sec. 11990, Anno. 71 *et seq.*)

DE GRAFF, C. J., and EVANS and MORLING, JJ., dissent.

Headnote 1: 27 C. J. p. 264; 30 C. J. p. 673.

Headnote 1: 13 R. C. L. 1026.

*Appeal from Woodbury District Court.*—MILES W. NEWBY, Judge.

APRIL 6, 1926.

REHEARING DENIED DECEMBER 16, 1926.

Action in equity by a plaintiff, the surviving spouse, against the executor, the legatees, and the heirs at law of a deceased

wife, to establish and confirm his interest, as such survivor, in the estate of the deceased.  The defendants set up an alleged antenuptial contract as a bar to plaintiff's recovery.  The facts are stated in the opinion.  From a decree in favor of defendants, the plaintiff appeals.—*Reversed.*

*E. C. Logan* and *Jepson, Struble, Anderson & Sifford,* for appellant.

*Earl Edmunds* and *Snyder, Gleysteen, Purdy & Harper,* for appellees.

VERMILION, J.—This appeal involves the right of the appellant, the surviving husband of Rebecca Battin, deceased, to the interest and share in her estate allowed by law to a surviving spouse.  Prior to her marriage to appellant, the deceased was a widow, and her name was then Walker.  The appellees are the executor of her estate and her children by the former marriage, who are her heirs at law and the sole legatees under her will.

The case turns upon the validity of an alleged antenuptial agreement, or the proof of such an agreement, between appellant and the deceased.  If there is no antenuptial agreement or no competent proof of such an agreement, the appellant is entitled to recover.

The written instrument upon which appellees rely as the antenuptial contract, or as the written evidence of an antenuptial contract, is lost, but it is conceded by appellant that the copy in evidence is a correct copy of the purported contract signed by the appellant and his deceased wife.

Much of the testimony on both sides was objected to on various grounds, but it was established by uncontradicted testimony, to which no valid objection was made, that, on the day of the marriage of appellant and deceased, they went to the town of Tyndall, South Dakota, taking with them the granddaughter of the deceased, a young girl 15 years of age; that they arrived in Tyndall in the forenoon, and visited the office of an attorney; that they were married about noon, had lunch, and later returned to the attorney's office, where the instrument in question was signed, about 3:30 or 4:00 o'clock.  The writing is in part as follows:

"That the said Bazel D. Battin, for and in consideration of the covenants and agreements on the part of the said——Walker, hereinafter contained, has this day promised and agreed, and does hereby covenant, promise and agree, to and with the said ——Walker, that he will marry and receive in marriage the said——Walker, upon the terms, covenants, agreements, and conditions hereinafter set forth."

It further provides that:

" * * * in view of said marriage and for and in consideration of the promises, covenants and agreements herein contained, the said Bazel D. Battin and the said——Walker, and each of them, for themselves, their heirs, executors, administrators and assigns, do hereby promise, covenant and agree, and consent, to and with each other; the said Bazel D. Battin covenants and agrees, to and with the said——Walker, her heirs, devisees, legatees, executors, administrators and assigns, that in the event that he shall survive her, then and in such case, he will not participate as an heir, in any estate, real or personal, of which she may die the owner, nor make any claim thereto, as heir or surviving husband, to which he would be entitled under the laws of succession, except for this agreement, and he, for himself, his heirs executor or administrator, hereby expressly waives, releases, relinquishes, and quitclaims, any and all right, title, or interest in any estate, real or personal, of which the said——Walker may die the owner."

The appellees offered testimony, which was objected to, tending to show that, on the first visit to the attorney's office, the parties stated the terms of an oral antenuptial agreement, which the attorney embodied in the written instrument that was executed by the parties on the occasion of the second visit to the attorney's office, after the marriage.

The appellees, in their effort to establish an enforcible contract depriving appellant of an interest in the estate of his deceased wife, are confronted by two statutory provisions. The first of these is Section 3154, Code of 1897 (Section 10447, Code of 1924), providing that, when property is owned by the husband or wife, the other has no interest therein which can be the subject of contract between them. Under this statute, the written contract executed after the marriage is void and wholly ineffectual to accomplish their purpose. The other is the statute

of frauds (Section 4625, Code of 1897 [Section 11285, Code of 1924]), providing that no evidence of a contract in considera-. tion of marriage is competent unless it be in writing and signed by the party charged. This is a statute of evidence, and relates only to the method by which the contract must be proved. *Rueber v. Negles*, 147 Iowa 734. It imposed upon appellees the necessity of establishing the claimed antenuptial contract by written evidence.

The appellees meet the situation by the contention that the written instrument executed after marriage evidenced a prior and antenuptial parol agreement, and that thereby competent proof under the statute of frauds was made of a contract entered into before marriage, which, therefore, did not come within Section 3154. They rely upon the case of *Kohl v. Frederick*, 115 Iowa 517. It was there said:

"That an antenuptial oral agreement as to property rights may, after marriage, be evidenced by a written memorandum, which is competent as between the parties, is practically conceded by the appellant, and is well settled by the authorities."

In that case, the written contract executed after marriage recited that the parties "have agreed before marriage and do now agree" that the survivor of them should not "inherit any claim, right or interest in or to the estate of the other," and it was conceded that the writing evidenced a parol antenuptial contract. The contention there was over the construction of the contract, and particularly the word "inherit."

In *Frazer v. Andrews*, 134 Iowa 621 (11 L. R. A. [N. S.] 593), the question arose over a written contract made after marriage, which did not refer to a prior and antenuptial parol contract. It was alleged in the petition that the writing was made subsequent to marriage in pursuance and to preserve written evidence of an oral agreement made before marriage. We held, after an extensive review of authorities, including *Kohl v. Frederick*, supra, and other Iowa cases, that a demurrer to the petition should have been sustained, and said:

"Looking to our statutes for a guide, we are of the opinion that, unless the agreement made after marriage recites that it is to furnish evidence, or is in consideration of a previous antenuptial contract, it is within the statute of frauds, or prohibited by Section 3154 of the Code, and cannot be enforced."

Appellees insist that the contract in question conforms to this rule and meets this condition, in that it recites the consideration of a prospective marriage to be the covenants and agreements of the contract, and, therefore, in effect recites that it is to evidence, or is in consideration of, an antenuptial agreement.

In our opinion, the written instrument in question merely purports on its face to be what, under the evidence that it was executed after marriage, it clearly is not in fact, an antenuptial agreement. It does not in terms say that it was to evidence a parol antenuptial agreement, or that it was entered into in consideration of such a prior agreement. It does not say that there was, or in any manner refer to, an antenuptial contract. It is true, a written contract is but the evidence of the actual agreement, the meeting of the minds of the contracting parties. But the difficulty in the way of any application of that doctrine in aid of appellees is that, when the writing alone is relied upon to establish a prior parol contract, it does not on its face establish a contract entered into before marriage, when it is shown that it was actually executed after marriage. So far as appears from the writing itself, the minds of the parties did not meet on the terms there set out until the time of its execution, which was after the marriage. The proof that there was an antenuptial contract is still to be made by parol evidence, which cannot be received because of the statute of frauds. *American Oak Leather Co. v. Porter Bros. & Hackworth,* 94 Iowa 117; *Allan v. Bemis,* 120 Iowa 172; *Frazer v. Andrews,* supra.

It is true, the answer setting up the written instrument would not have been demurrable; for, as we have noted, the instrument purported to have been executed before marriage, and was alleged to have been so executed. The question here, however, arises upon the proof; and when it is shown that the instrument was in fact executed after marriage, in the absence of a recital therein that it was to furnish evidence or was in consideration of a parol antenuptial agreement, it fails in itself to furnish written evidence of such an agreement. The appellees were then put to parol evidence to establish the fact that there was an agreement of the contracting parties before marriage, and this the statute of frauds forbids.

The situation is this: If the writing itself establishes an oral antenuptial agreement, the contract is not within the statute of

frauds, and Section 3154 is not violated. But if parol evidence is required to establish that there was a prior and antenuptial contract, that there was a meeting of minds on the terms of the contract before marriage, this is in contravention of the statute of frauds, and the parol evidence is inadmissible, and the writing itself, executed after marriage, comes under the prohibition of Section 3154.

Annotations in connection with the publication of the opinion in *Frazer v. Andrews,* supra, in Lawyers Reports Annotated, show the doctrine there announced to be in accord with the great weight of authority.

We are unable to distinguish the case at bar, and are of the opinion that it falls within the rule of the *Frazer* case, and that the conclusion of the court below cannot be sustained. The judgment, therefore, is—*Reversed.*

STEVENS, FAVILLE, and ALBERT, JJ., concur.

MORLING, J. (dissenting.)—It is undisputed that the plaintiff and his deceased wife on the day of their marriage arrived at an agreement. Whether the agreement became a contract or not depends on the question whether, at the time their minds met (not the time when the writing was signed), the marriage ceremony had been performed. If, before the minds of the parties met in agreement, they had become husband and wife, then there was no contract, not because of the statute of frauds, but because they were legally incapacitated to contract with reference to the subject-matter. The statute reads (Section 3154 of the Code of 1897):

"When property is owned by the husband or wife, the other has no interest therein which can be the subject of contract between them."

The subject-matter of the agreement, if they were previously married, was the assumed interest of each in the property of the other. But under the statute, no such interest capable of being the subject of contract between them existed. Though the parties agreed, there was, therefore, no contract. This would be true whether the agreement was oral or in writing. If, however, at the time the minds of the parties met in agreement, the marriage had not been entered into, then all of the elements of a con-

tract, including the subject-matter and capacity of the parties to contract, existed. The statute of frauds, however, applies to such a contract, not to nullify it, or to pronounce it no contract, but to require, in case of controversy, written evidence of it. The statute reads:

"Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing: and signed by the party charged * * * 1. Those made in consideration of marriage."

The completed and executed writing is lost, and we have before us the attorney's office copy, which was not filled out and made a complete copy. This very lack of completeness in form, however, is convincing of the completeness of the agreement on all of the terms before marriage. This writing on its face is an "antenuptial agreement." It names as the parties the plaintiff and "—— Walker." It does not name as the parties "Battin" and "Battin," who, under those names, would be presumptively husband and wife, but "Battin" and "Walker," who, under those names, would not be husband and wife. No question is raised that decedent was a party to it. The plaintiff testifies that she signed it under the name of Walker. It does not purport in the remotest degree to be a contract between husband and wife. It recites that Battin, in consideration of the agreements of Walker, "has this day promised and agreed, and does hereby covenant, promise and agree to and with the said——Walker that he will marry and receive in marriage the said——Walker." There is the corresponding covenant on the part of Mrs. Walker to marry the plaintiff. These recitals are promissory, and in contemplation of a future marriage,—not one that has been consummated. It is recited that each, "with full knowledge of what their right under the law would be in and to the property of the other if married without an agreement made with reference to such property before said marriage * * * and in view of said marriage," will not make any claim, as survivor, to the property of the other. Further:

"It is mutually understood and agreed * * * that each of them is the owner of ample property of his or her own to maintain him or her for and during the term of his or her natural life and it is the mutual intention of each of the parties hereto

that neither shall take as an heir or surviving husband or wife as the case may be of the other.''

The writing on its face, therefore, was made, and the signers of it, by the force of its terms, admit that it was made, before marriage. It is full and complete. No question of receiving parol evidence to change, add to, or take from the writing is in the case. I think the majority have not given to parts of the record the consideration to which it is entitled. The original writing was lost. The defendants undertook to prove its execution and contents. In the effort to account for the original, one of the defendants testified that he asked the plaintiff what became of the contract, and in relating the conversation with the plaintiff, the witness testified that plaintiff said he thought it was not of any value, because it was signed after they were married. On cross-examination, this witness was asked about a conversation with his mother, the decedent, and testified that she said that the contract was entered into before they were married, and signed afterwards. There is no doubt that the decedent intended to have an antenuptial contract. There is no doubt that she understood that she had an antenuptial contract. The plaintiff was present when the terms of the contract were talked over in the law office of Mr. French. It seems to me that, on this record, there can be no reasonable doubt that the parties, before they were married, agreed before the lawyer, Mr. French, upon all of the terms of the contract, and that it should be reduced to writing, and it was left with Mr. French to draw up accordingly; that he did draw it; that, having fully agreed upon their contract, the plaintiff and decedent, not intending to cast any question on the validity of their agreement, had the marriage ceremony performed, after which they signed the writing embodying the terms of the agreement as they had actually made it, and as their minds had met upon it before the marriage ceremony, and as it was originally drawn. The plaintiff testifies, in substance, that he first got the license and went back to the hotel, and that then decedent said she wanted to go to a lawyer's office; that, before she said that, nothing had been said as to any contract about property rights. He does not say that at that time, or between that time and the time of the marriage, he was not made fully aware of the decedent's purpose to have such a contract, or that he did not consent to the agreement as she wanted it, or that

he never agreed to any antenuptial settlement. He merely says that he did not hear any of the conversation in the lawyer's office; that it was carried on between Mrs. Walker and Mr. French: but he says they were there maybe half an hour; that she told him that she wanted to return; that they did return to the office: and he makes this significant statement:

"The contract was not ready, and when it was completed, a copy of it was handed to me to read. I read over the copy of the contract that was handed me, and signed a copy of it, and Mrs. Walker signed a copy of it. Mrs. Battin signed the contract under the name of Walker. She was my wife at the time, and I drawed her attention to it * * * I didn't object to the contract. * * * I paid Mr. French for preparing it."

He had got the license first, as he says, but, instead of going to the minister's house, they went to the law office. They were there for a purpose, and he must have known what that purpose was. The plaintiff's testimony was given in open court. It seems to me that the evidence shows that the plaintiff was not as deaf as he claimed to be. He evidently was a Civil War veteran, giving his testimony in 1924. He had recently conveyed a considerable part of his property to his daughter and son-in-law. He was laboring under the infirmity of recollection incident to age, and the interest resulting from lessened financial resources, if not from the pressure of outside influences. I think the record shows that he did hear and know, and knowingly became a party to a completed verbal agreement, expecting it to be written and signed, and that he signed it and paid for it as expressing what had been agreed to, an antenuptial contract.

I think I am warranted in setting out the evidence more completely. Hegnes, a banker, testified in behalf of defendants, without objection:

"Mrs. Battin discussed with me, prior to her marriage with Mr. Battin, the forthcoming marriage. * * * Prior to her marriage, she talked to me about a proposed antenuptial contract, and discussed its terms."

Further testimony as to what she said was objected to. On cross-examination, he said:

"I am satisfied the contract that was shown me here—the contents of it, the main issues—are just the way she spoke before

they were married, and the way the contract was. I am satisfied this is a copy of that contract."

One of her sons testified, without objection:

"I asked Mr. Battin what became of the contract between him and my mother, and he said that he thought Froen got it, the first time * * * I think he said the contract was no good anyway. * * * Said he thought it wasn't of any value, because it was signed up after they were married."

On cross-examination, he testified:

"I talked to my mother about it after I had talked to Mr. Battin. I asked her about the contract, and whether it was signed after they were married, and I think she said it was entered into before they were married and signed up afterwards."

The lawyer who drew the contract testified that, when Mr. and Mrs. Battin came to his office, soon after the train arrived (it was due there at 9:30 or earlier), and introduced themselves, they "told me they were about to be married, and wished a contract to be made with reference to the property each of them had, and told me what they had, as between themselves, agreed upon. * * * It is my recollection that they both said the kind of agreement they wanted to enter into. [This was given without objection, but later, objection and motion to strike it were made.] * * * I prepared a contract during their absence from the office, and as I remember it, they came back a second time and signed it. * * * I have no recollection of how these blanks came there, but I think I know why they are there, because the contract was drawn in the absence of Mrs. Walker, and I must have, in getting the information from these people in reference to that contract, not obtained the way that the first name, or the way she usually signs her name. I don't remember filling in those blanks. * * * I wouldn't deny that Mrs. Walker was the one who did the most talking. * * * As I remember it, this is the first contract of that kind that I had prepared, and I wanted to examine approved forms. * * * There is a possibility that I prepared the contract in the afternoon while they were there, and that they waited for it, but it is against my recollection as to how it happened. * * * My recollection is that both came into the office, and took part in saying what they wanted."

The witness admitted his difficulty in remembering the par-

ticulars of a conversation that occurred ten years before. The stenographer testified that her recollection was that this contract was the first thing that she did in the afternoon.

"My recollection is that the contract was ready for them to sign when they came in. I was in the office when they came in, and after they signed it I wouldn't say I was present."

The then 15-year-old granddaughter who accompanied them testified that she couldn't say whether they went to the lawyer's office first, or to the hotel, from the train; that she went with them to the lawyer's office in the forenoon after 10 o'clock.

"Mrs. Walker and Mr. Battin talked to Mr. French in a separate room. * * * After we returned to the hotel in the morning from the lawyer's office, we stayed at the hotel while Mr. Battin got the license. He came back, and then we went to the minister's house. * * * This was just before noon, or right around noon. After the ceremony, we went to lunch, and after lunch, to the lawyer's office."

Plaintiff's testimony follows as above recited. Plaintiff was examined and cross-examined in open court. The other evidence concerning his deafness was that of the lawyer, French, who said his best recollection was that plaintiff took part in the conversation; that he had no recollection that he was not able to hear an ordinary conversation; that he had a short conversation with plaintiff just before court adjourned.

"I think I spoke about like I am speaking now,—perhaps occasionally raising my voice a little. * * * We were sitting right together, so we could touch each other. * * * Mr. Battin responded. I think some he didn't hear until I would raise my voice. * * * Part of what I said to Mr. Battin was above my ordinary conversation voice. He responded to the conversation."

The witness couldn't recollect whether, when plaintiff was in his office in 1915, he was hard of hearing or not. He says that, to the best of his recollection, plaintiff took part in the conversation. Another banker testified:

"I have known Mr. Battin ever since I was a boy. I have done business with Mr. Battin. I don't know as to how long he has been deaf. I have had business dealings with him since 1919, and have probably talked with him before that time. I think he is harder of hearing now than he was, although I am not sure about that. * * * During the time that I have done business

with him, I have always talked considerably louder to him than
I would an ordinary person. I had no trouble making him under-
stand me. He seemed to know how to do business. I don't know
as I ever talked as loud as we did today.''

Decedent left a will, reciting ''that a prenuptial agreement
was entered into between myself and my husband, Bazil D. Bat-
tin, this agreement was made at Tyndall, South Dakota, on the
12th day of April, 1915, just prior to our marriage and provided
that my said husband Bazil D. Battin waived all dower rights.
* * * ''

The statute of frauds, with us, is merely a statute of evi-
dence. *Merchant v. O'Rourke*, 111 Iowa 351. It was originally
enacted as ''an act for the prevention of frauds and perjuries.''
In *Murphy v. DeHaan*, 116 Iowa 61, 63, it is said:

''This statute was not enacted for the purpose of aiding one
in the perpetration of a fraud, but to secure him from the conse-
quence thereof. It was intended as a shield, and not as a sword.''

In the first place, the writing on its face evidences an ante-
nuptial contract. By signing it, the plaintiff admitted the exist-
ence of the antenuptial contract. On its face, it was made before
and in contemplation of marriage. A writing is not an essential
element of the contract. An acknowledgment in writing of the
pre-existence of the contract, the terms of which are set out in
the writing, fulfills the purpose of the statute. *Warfield v.
Wisconsin Cranberry Co.*, 63 Iowa 312. We do not have to look
outside of the writing for any of the terms of the agreement,
nor in the first instance for the fact that the contract was made
before marriage. It develops that the writing was signed after
marriage; but, as will appear, the parties after marriage are
competent to make the necessary written evidence that before
marriage they entered into the agreement. A writing made after
marriage may evidence the terms of the parol agreement made
before marriage, and furnish the necessary written evidence.
The plaintiff, in effect, is using the testimony that the signatures
were affixed after marriage, to impeach the writing as a written
evidence of the making of the contract before marriage. The
principle underlying Lord Bacon's rule that a latent ambiguity,
being raised by extrinsic evidence, may be removed by the same
kind of evidence, is pertinent. It is true that the act of signing a
document may be the evidence of the meeting of minds which had

not previously occurred. Frequently, if not usually, however, the parties agree verbally, and then write out the evidence of their agreement. In that case, the agreement exists from the moment of the meeting of their minds. When the parties came to an agreement orally upon all of the terms of the contract, intending it to become then operative, the contract was formed and enforcible, though they intended to put it in writing; but the making of the writing was delayed. The contract dated from the meeting of the minds. *Billiard v. Miloslowsky,* 167 Iowa 395, 407; *Federal Land & Sec. Co. v. Hatch,* 147 Iowa 18; *West India S. S. Co. v. Chicago H. W. Co.,* 161 C. C. A. 346 (249 Fed. 338); *Brown v. Jerome,* 298 Fed. 1.

The evidence shows beyond question that Mrs. Walker intended to have a contract before she married plaintiff. I think the facts and circumstances show that both the plaintiff and Mrs. Walker, when they left the lawyer's office, believed that they were in full agreement; that their property rights had been settled, their arrangement completed, and the antenuptial contract settled. Not only so believed, but such was the case. When the writing was shown to the plaintiff and decedent, it was completed (except filling in Mrs. Walker's baptismal name). No terms were agreed to after the marriage; no change in the writing was made. There is no explanation of how that writing got in its completed form, as it was submitted to plaintiff and decedent, except that the parties told the attorney, when they were in his private office, before marriage, what they wanted, and he drew the writing from what they then agreed to. By the very force of those terms, it was made before marriage; and when the writing in that form was signed, it could be nothing less than an admission, under those circumstances, that the parties to it had so agreed before marriage. It seems to me indisputable that the facts demonstrate a complete meeting of the minds before the lawyer started in to draw up the writing. We have, then, the fact of the existence of a contract orally agreed to before marriage; we have the evidence of all of its terms in writing; we have the writing in such form as to be necessarily an admission that the agreement was made before marriage. There is no claim that the contract was unfair, or that any fraud was practiced in procuring it.

To the argument that the contract cannot be established as

an antenuptial contract without resort to oral evidence, the reply is:

First. As it seems to me, it misconstrues the language of the *Frazer* case, "that, unless the agreement made after marriage reads that it is to furnish evidence, or is in consideration of a previous antenuptial contract, it is within the statute."

As construed by the majority, the statement is dictum, and the majority opinion erroneously postulates such dictum as law. The written agreement in the *Frazer* case, as will be later shown, was, on its face, made after marriage, and recited an oral agreement made before marriage. It was not within the province of the court to determine that all future cases must conform to that pattern. Here, the agreement was made before marriage. The evidence was drawn contemporaneously with the agreement. On the face of the writing, the agreement was made before marriage. It is merely proved that, by accident or undue haste, the formal act of affixing signatures was performed after the marriage ceremony. It is not true, as will be presently shown, that the statute of frauds excludes oral evidence of the making, existence, or, in some cases, even the terms of the contract.

Second. The second reply is that the parol evidence goes merely to support the writing, and to show that it was, as it purports to have been, the written evidence of an agreement that was made before marriage. The parol evidence goes to the time of making the contract; it does not vary the terms of the contract.

Third. Though a writing signed after marriage, it is in such form as to be an admission of the making of the contract before marriage, and of its terms, within the principle of the *Frazer* case.

Fourth. As will appear, the statute of frauds is no stronger than the parol-evidence rule, under which the necessary parol evidence offered in this case would be admissible. If we grant the spirit of the dictum in the *Frazer* case, still the real question would be, not whether there is postnuptial evidence in writing, but whether there is written evidence of a prenuptial contract. Does the writing furnish evidence that the contract was a prenuptial contract?

A contract within the statute of frauds may be reformed on oral evidence, and, as so reformed, enforced. *Ring v. Ash-*

*worth,* 3 Iowa 452, 457; *Butler v. Threlkeld,* 117 Iowa 116. In *Merchant v. O'Rourke,* 111 Iowa 351, there were two agreements, the first claimed to be within the statute of frauds. This court held that, assuming such to be the case, it still might have been established by the testimony of the opposing party, and that, if his "oral admission could thus establish liability against him, we do not see why a recognition by him was not sufficient to give to this first contract vitality enough to make a release from its obligation operative as a consideration for the new agreement."

In the case at bar, the question is not one of consideration of an agreement made after marriage; for the actual contract was made before marriage.

In *Spencer Turner Co. v. Robinson,* 55 Misc. Rep. 280 (105 N. Y. Supp. 98), it was held that a letter asking plaintiff not to send the goods, and inclosing the bill for credit, though construed to be a repudiation of liability, was still a sufficient "note or memorandum" of the agreement,—quoting from 5 Wigmore on Evidence (2d Ed.), as follows:

"In other words, the writing *is not* the contract, but is distinct from it, and is merely the parties' admission that such a contract was made. The difference is plain, and is generally conceded, and shows its practical results in various ways. For example, the written admission may be made subsequently to the contract; it may even in terms attempt to repudiate the contract; it may be a letter to a third person."

Also, from Browne on the Statute of Frauds (5th Ed.), as follows:

"It has therefore always been held that letters addressed to a third party, stating and affirming a contract, may be used against the writer, as a memorandum of it. And for the same reason, an oral contract may be taken out of the statute by letters which admit the making of the contract by the writer, but in terms repudiate his liability."

The principle that evidence of the original agreement is admissible to sustain the writing is applicable. Parol evidence of facts essential to the cause of action other than "of the contract" is admissible. If the written contract is lost or destroyed, parol evidence of it is admissible. *In re Estate of Devoe,* 113 Iowa 4. If the contract is made by an agent, the proof of his authority may be by parol, and the use of his initials in signing may be

sufficient as an execution of the contract by him. *Burns v. Burrows*, 196 Iowa 1048. Unless the contract is acknowledged or admitted, or at least if the signature is properly denied, parol evidence of the genuineness of the signatures must be given. If the contract is in writing, or if there is a written admission of its existence, probably no one would deny that it might be shown that the oral contract contained other terms than the writing (*Bennett v. Nye*, 4 G. Greene 410; *Fisher & Son v. Andrews*, 94 Md. 46 [50 Atl. 407]; *Polucek v. Jahoda*, 203 App. Div. 38 [196 N. Y. Supp. 445]; *Colonial Park Estates v. Massart*, 112 Md. 648 [77 Atl. 275]), or that, by fraud or mistake, the written admission of the terms of the contract was untrue, and that, therefore, there was no contract in fact. 27 Corpus Juris 385, Section 478. If evidence to impeach the contract or the recitation of it is admissible, controverting evidence tending to sustain the contract or the writing ought to be admissible. *Chiles v. Coleman*, 2 A. K. Marsh. (Ky.) 296 (12 Am. Dec. 396). See, also, *Bennett v. Nye*, 4 G. Greene 410.

It was held by this court in *Lee v. Mahoney*, 9 Iowa 344, 349, that connecting evidence in the case of separate papers may be given by parol. Where both parties were named in the memorandum, but it did not appear which was seller or which was buyer, parol evidence was admitted that one was a flour dealer and the other a baker, in order to show which was vendor and which was vendee. *Newell v. Radford*, L. R. 3 C. P. 52.

In *Tobias v. Lynch*, 192 App. Div. 54 (182 N. Y. Supp. 643), the agreement did not show which party was vendor or which was vendee, but it was stipulated that the defendant was vendor; and the contract was sustained.

In *Anderson v. Best*, 176 Pa. St. 498 (35 Atl. 194), it was held that, though the original promise could not have been recovered upon, yet a subsequent promise in writing, having for its consideration the former promise, was enforcible.

In *Carter-Moss Lbr. Co. v. Lomax*, 30 Ga. App. 718 (119 S. E. 534), one of the divisions of the syllabus by the court is:

''An antecedent promise of the promisor to pay the indebtedness is evidence tending to establish the existence of the executed agreement; and where, in a litigation between the parties, the executed agreement, and not the antecedent promise, is relied upon by one of the parties to establish a right, such antecedent

promise, having only an evidentiary value, and not being the basis of any binding obligation, may be established by parol.''

*Frazer v. Andrews*, 134 Iowa 621, may be laid aside; for there, while it was claimed that there was a prior antenuptial oral contract, the written contract on its face was made after marriage, was a present relinquishment of the then interest in each other's property,—a purported postnuptial contract,—and was, therefore, invalid, under Section 3154. The statement in the opinion, ''* * * unless the agreement made after marriage recites that it is to furnish evidence, or is in consideration of a previous antenuptial contract, it is within the statute of frauds * * *,'' while entitled to great weight, as the opinion of a great judge, is, nevertheless, *obiter dictum*, and is subject to the errancy of the human intellect in attempting to lay down rules for the decision of future cases, the facts of which were not and could not be prognosticated.

*American Oak Leather Co. v. Porter Bros. & Hackworth*, 94 Iowa 117, is inapplicable; for the contents of the writing there did not set out the necessary terms of a completed agreement. *Allan v. Bemis*, 120 Iowa 172, as a written admission of a contract, aside from the question under consideration, does not apply, for the same reasons.

The parol-evidence rule is a rule of substantive law of equal vigor, within its field of operation, with the statute of frauds. The evidence that would be admissible in a contract within the parol-evidence rule would be admissible in a case coming within the statute of frauds. *Tallman v. Franklin*, 14 N. Y. 584, 589; *Guy v. Barnes*, 29 Ind. 103; *Miller v. Tanners' Supply Co.*, 150 Mich. 292 (114 N. W. 61); 27 Corpus Juris 381. The existence of the parol agreement (it being a valid agreement) is provable in aid of the inference deduced from the writing that it was made to evidence a prenuptial contract, and not to evidence an invalid postnuptial contract. *McGrath v. Quinn*, 218 Mass. 27 (105 N. E. 555); *Paddock v. Clark*, 22 Idaho 498 (126 Pac. 1053, 1056). See, also, *Houge v. St. Paul F. & M. Ins. Co.*, 174 Iowa 607.

The written evidence of the contract does not show it void on its face, and parol evidence is admissible, to sustain its validity. Evidence of conversations in the attorney's office is admissible, to sustain the instrument and to show that it was, in fact,

written evidence of an antenuptial contract. *Kelly & Mahon v. Fejervary*, 111 Iowa 693, 700; *Flegel v. Dowling*, 54 Ore. 40 (102 Pac. 178, 181); 22 Corpus Juris 1180; *Ford Motor Co. v. Hotel Woodward Co.*, 271 Fed. 625, 628. See, further, *Bolene Ref. Co. v. Zobisch Oil Co.*, 98 Okla. 202 (224 Pac. 942); *Woodruff Oil & F. Co. v. Portsmouth Cotton Oil R. Corp.*, 158 C. C. A. 439 (246 Fed. 375); *Beckwith v. Talbot*, 95 U. S. 289; *Mead v. Leo Sheep Co.*, 32 Wyo. 313 (232 Pac. 511).

I think the judgment is right, and that it should be affirmed.

DE GRAFF, C. J., and EVANS, J., join in this dissent.